# EXHIBIT B

Received County of Berks Prothonotary's Office on 04/08/2026 12:53 PM Prothonotary Docket No. 26-00690

**ZENSTEIN KOVALSKY, LLC**
By: JOSEPH A. ZENSTEIN, ESQUIRE
Identification No.: 62349
1240 Old York Road, Suite 101
Warminster, PA 18974
jzenstein@zensteinlaw.com
(215) 230-0800

**MAJOR CASE**

Attorney for Plaintiff

| | |
|---|---|
| SALAZAR COCINA, LLC<br>440 Lehigh Street<br>Reading, PA 19601<br><br>v.<br><br>BENCHMARK INSURANCE COMPANY<br>150 Lake Street West<br>Wayzata, MN 55391 | COURT OF COMMON PLEAS<br>BERKS COUNTY<br><br>DOCKET NUMBER: 26-690 |

## NOTICE TO DEFEND

### NOTICE

You have been sued in court. If you wish to defend against the claims set forth in the following pages, you must take action within twenty (20) days after this complaint and notice are served, by entering a written appearance personally or by attorney and filing in writing with the court your defenses or objections to the claims set forth against you. You are warned that if you fail to do so the case may proceed without you and a judgment may be entered against you by the court without further notice for any money claimed in the complaint or for any other claim or relief requested by the plaintiff. You may lose money or property or other rights important to you.

YOU SHOULD TAKE THIS PAPER TO YOUR LAWYER AT ONCE. IF YOU DO NOT HAVE A LAWYER, GO TO OR TELEPHONE THE OFFICE SET FORTH BELOW. THIS OFFICE CAN PROVIDE YOU WITH INFORMATION ABOUT HIRING A LAWYER.

IF YOU CANNOT AFFORD TO HIRE A LAWYER, THIS OFFICE MAY BE ABLE TO PROVIDE YOU WITH INFORMATION ABOUT AGENCIES THAT MAY OFFER LEGAL SERVICES TO ELIGIBLE PERSONS AT A REDUCED FEE OR NO FEE.

Lawyers' Referral Service of the
Berks County Bar Association
544 Court Street
Reading, Pennsylvania 19601
Telephone (610)375-4591
www.BerksBar.org

### AVISO

Le han demandado a usted en el tribunal. Si usted quiere defenderse de las demandas expuestas en las páginas siguientes, usted debe tomar acción en el plazo de veinte (20) días a partir de la fecha en que se le hizo entrega de la demanda y la notificación, al interponer una comparecencia escrita, en persona o por un abogado y registrando por escrito en el tribunal sus defensas o sus objeciones a las demandas en contra de su persona. Se le advierte que si usted no lo hace, el caso puede proceder sin usted y podría dictarse un fallo por el juez en contra suya sin notificación adicional y podría ser por cualquier dinero reclamado en la demanda o por cualquier otro reclamo o desagravio en la demanda solicitado por el demandante.

USTED DEBE LLEVARLE ESTE DOCUMENTO A SU ABOGADO INMEDIATAMENTE. SI NO TIENE ABOGADO O NO PUEDE CORRER CON LOS GASTOS DE UNO, VAYA O LLAME POR TELEFONO A LA OFICINA EXPUESTA ABAJO. ESTA OFICINA PUEDE POVEERLE INFORMACION RESPECTO A COMO ONTRATAR A UN ABOGADO.

Servicio de Recomendación para Contratar Abogados del Colegio de Abogados del Condado Berks
544 Court Street
Reading, Pennsylvania 19601
Teléfono (610) 375-4591
www.BerksBar.org

Trean Rec'd 04-16-2026

**ZENSTEIN KOVALSKY, LLC**
By: JOSEPH A. ZENSTEIN, ESQUIRE
Identification No.: 62349
1240 Old York Road, Suite 101
Warminster, PA 18974
jzenstein@zensteinlaw.com
(215) 230-0800

**MAJOR CASE**

Attorney for Plaintiff

SALAZAR COCINA, LLC
440 Lehigh Street
Reading, PA 19601

v.

BENCHMARK INSURANCE COMPANY
150 Lake Street West
Wayzata, MN 55391

COURT OF COMMON PLEAS
BERKS COUNTY

DOCKET NUMBER: 26-690

## CIVIL ACTION COMPLAINT

1.      Plaintiff, Salazar Cocina LLC, is a business entity with a principal place of business at 440 Lehigh Street, Reading, Pennsylvania 19601.

2.      Defendant, Benchmark Insurance Company, is a corporation duly organized and existing which is licensed to issue policies of insurance in the Commonwealth of Pennsylvania and maintains its principal place of business at the address set forth above.

3.      At all times material hereto, Defendant acted by and through its agents, servants, employees, and representatives acting within the course and scope of their employment.

4.      Defendant, in its regular course of business, issued to Plaintiff a policy of insurance, Policy No. CBB-00078642-00, providing coverage for, *inter alia*, Business Personal Property, including tenant improvements and betterments, as well as Business Income and Extra Expense losses arising from suspension of operations due to a covered loss.

Trean Rec'd 04-16-2026

Received County of Berks Prothonotary's Office on 04/08/2026 12:53 PM Prothonotary Docket No. 26-00690

5.      On or about April 11, 2024, while said policy of insurance was in full force and effect, Plaintiff sustained a sudden and accidental direct physical loss as a result of a fire, smoke, and water event, causing substantial damage to Plaintiff's property and business operations, to the extent set forth in the inventory and estimate prepared by State Public Adjusting Co., true and correct copies of which are attached hereto as Exhibit "A", and resulting in the suspension of Plaintiff's operations and corresponding loss of business income and continuing rental obligations, in an amount currently being determined.

6.      Notice of Plaintiff's covered loss was given to Defendant in a prompt and timely manner and Plaintiff has done and otherwise performed all things required under the policy of insurance issued by Defendant, including cooperating with Defendant's investigation; mitigating damages where reasonable, required and/or possible; providing Defendant with all available information and complying with all conditions precedent.

7.      Defendant, despite demand for benefits under its policy of insurance, has failed and refused to pay to Plaintiff those benefits due and owing under said policy of insurance.

8.      From the date of loss through at least late 2025, Defendant failed to prepare any estimate of the loss, issue any coverage determination, or make any meaningful payment toward Plaintiff's claim.'

9.      Between April 2024 and September 2025, Defendant allowed the claim to remain dormant for approximately seventeen (17) months without resolution.

10.     On or about September 8, 2025, Plaintiff retained a public adjuster due to Defendant's failure to properly adjust the claim.

11.     Thereafter, Plaintiff, through its representatives, repeatedly requested the status of the claim, a coverage determination, and payment of undisputed benefits. See Exhibit "B".

Trean Rec'd 04-16-2026

12.    Despite these repeated communications, Defendant failed to respond in a timely or meaningful manner and failed to advance the adjustment of the claim.

13.    On or about November 21, 2025, more than nineteen (19) months after the loss, Defendant for the first time requested categories of documentation necessary to evaluate the claim, which had either already been provided or should have been requested long before.

14.    During December 2025 and January 2026, Plaintiff made repeated efforts to obtain a coverage determination and payment, including multiple emails and telephone communications, which were ignored or inadequately addressed by Defendant.

15.    Defendant acknowledged the existence of damage and continued to investigate the claim but nevertheless failed to issue any estimate, payment, or coverage determination.

16.    As of January 2026, more than 600 days after the loss, Defendant had failed to issue any meaningful payment or final coverage determination.

17.    Only after this prolonged delay did Defendant begin asserting coverage defenses, including attempts to deny coverage for betterments and improvements based on ownership arguments that could have been raised, if at all, at the outset of the claim.

18.    Defendant's delay and failure to pay benefits prevented Plaintiff from repairing the property and resuming operations.

19.    As a direct result of Defendant's conduct, Plaintiff was unable to repair or replace its damaged business personal property, was unable to reopen its restaurant, and suffered the loss of its business operations, including loss of income, loss of business value, and other consequential damages associated with the closure of its business, in an amount currently being determined.

20.    Solely as a result of Defendant's failure and refusal to pay benefits to Plaintiff as

Trean Rec'd 04-16-2026

required under the aforementioned policy of insurance, as well as the mishandling of Plaintiff's claim, Plaintiff has suffered loss and damage in an amount in excess of $50,000.00.

## COUNT I – BREACH OF CONTRACT

21.    Plaintiff incorporates by reference herein the facts and allegations contained in the foregoing paragraphs as though same were set forth herein at length.

22.    Defendant has breached its contractual obligations to pay benefits to Plaintiff for a loss covered under Defendant's policy of insurance.

WHEREFORE, Plaintiff demands judgment against Defendant in an amount in excess of $50,000.00 together with interest and costs.

## COUNT II – BAD FAITH

22.    Plaintiff incorporates by reference herein the facts and allegations contained in the foregoing paragraphs as though same were set forth herein at length.

23.    Defendant has engaged in Bad Faith conduct toward Plaintiff and has treated Plaintiff unreasonably and unfairly with respect to its adjustment of Plaintiff's covered loss, in violation of 42 Pa.C.S.A. §8371. "[T]o recover under a claim of bad faith, the plaintiff must show that the defendant did not have a reasonable basis for denying benefits under the policy and that defendant knew or recklessly disregarded its lack of reasonable basis in denying the claim." *Terletsky v. Prudential Property and Casualty Insurance Co.*, 437 Pa.Super. 108, 125, 649 A.2d 680 (Pa. Super. 1994),

24.    In furtherance of its bad faith and wrongful denial and refusal to pay benefits for Plaintiff's covered loss, Defendant, acting by and through its duly authorized agents, servants, workmen or employees, has engaged in the following conduct:

a) in failing to issue any coverage determination whatsoever within a reasonable time after notice of the claim, including failing to do so for more than a year and a half following the date of loss;

Trean Rec'd 04-16-2026

b) in failing to acknowledge and act promptly upon communications made by Plaintiff and/or its representatives, including repeated unanswered emails and telephone communications;

c) in failing to effectuate a prompt, fair, and equitable resolution of Plaintiff's claim despite clear evidence of covered fire, smoke, and water damage;

d) in failing to conduct a reasonable and timely investigation of the claim, including allowing the claim to remain dormant for an extended period and then attempting to reinvestigate the loss long after it was reported;

e) in unreasonably delaying the adjustment of the claim for over twenty (20) months without issuing an estimate, payment, or coverage determination;

f) in failing to pay undisputed benefits, including business personal property and other covered losses, despite knowledge of damage and receipt of supporting documentation;

g) in requesting additional information as a pretext to delay the claim while failing to meaningfully act upon the information provided;

h) in asserting late, shifting, and pretextual coverage positions, including attempting to deny coverage for tenant improvements and betterments despite policy language providing such coverage;

i) in taking positions regarding the scope and nature of damage without issuing any estimate or formal coverage determination;

j) in acting in an obstructive, dilatory, and unreasonable manner throughout the handling of the claim;

k) in failing to adopt and implement reasonable standards for the prompt investigation and handling of claims;

l) in placing its own financial interests above those of its insured;

m) in forcing Plaintiff, a small business, to remain closed and ultimately cease operations due to Defendant's failure to pay benefits owed under the policy;

n) in treating Plaintiff with reckless indifference and disregard under the circumstances.

25.    Solely as a result of Defendant's bad faith misconduct as aforesaid, Plaintiff has been required to obtain counsel to commence the present action to recover benefits due and

Received County of Berks Prothonotary's Office on 04/08/2026 12:53 PM Prothonotary Docket No. 26-00690

Trean Rec'd 04-16-2026

owing under the policy of insurance issued by Defendant for Plaintiff's covered loss, and has

incurred costs and other expenses in connection with said claim.

WHEREFORE, Plaintiff demands judgment against Defendant for punitive damages,

counsel fees and costs, together with interest on Plaintiff's claim in an amount equal to the prime

rate of interest plus three percent (3%), in an amount in excess of $50,000.00.

**ZENSTEIN KOVALSKY, LLC**

BY: _____

JOSEPH A. ZENSTEIN, ESQUIRE
Attorney for Plaintiff

Received County of Berks Prothonotary's Office on 04/08/2026 12:53 PM Prothonotary Docket No. 26-00690

**Zenstein Kovalsky, LLC**
1240 Old York Road, Suite 101
Warminster, Pennsylvania 18974
Tel: 215.230.0800
Fax: 215.230.0810

## VERIFICATION

I verify that I have read the foregoing Complaint and that it is true and correct to the best

of my knowledge, information and belief. I make this Verification subject to the penalties of 18

Pa. C.S.A. §4904 relating to unsworn falsification to authorities.

X *José Salazar*

Jose Salazar on behalf of
Salazar Cocina LLC

**File No: 515-1**

Received County of Berks Prothonotary's Office on 04/08/2026 12:53 PM Prothonotary Docket No. 26-00690

Trean Rec'd 04-16-2026

Received County of Berks Prothonotary's Office on 04/08/2026 12:53 PM Prothonotary Docket No. 26-00690

# EXHIBIT "A"

Received County of Berks Prothonotary's Office on 04/08/2026 12:53 PM Prothonotary Docket No. 26-00690

| Template Version: 4.1 | | | Loss Location: 440 Lehigh St. Reading, PA 19601 | | | | | | | Sales Tax Rate | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Insured:   Salazar Cocina LLC | | | Claim Number:   BMBOP2401019 | | | | | | | 6.000% | |
| Date of Loss: 4-11-24 | | | Policy Number: | | | | | | | | |

| | | Total Estimated Replacement Cost = | | | | | | | $80,525.88 | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Item # | Room | Item Description | Model # | Quantity | Approx. Age (Years) | Item Age (Months) | Unit Cost (each) | Sales Tax (each) | Total Cost | LINKS | Receipt Page # |
| 1 | | Cleaning hours for dishes and other salvagable content items | | 40 | | | $56.00 | $ 3.36 | $2,374.40 | | |
| 2 | | allotment for plastic containers, cups etc | | 1 | | | $2,000.00 | $ 120.00 | $2,120.00 | https://www.websta | |
| 3 | | Hot Buffet station | | 2 | | | $1,649.00 | $ 98.94 | $3,495.88 | https://www.websta | |
| 4 | | deli cases | | 2 | | | $2,299.00 | $ 137.94 | $4,873.88 | https://www.websta | |
| 5 | | double door freezers | | 2 | | | $2,399.00 | $ 143.94 | $5,085.88 | https://www.katom. | |
| 6 | | tables | | 8 | | | $169.99 | $ 10.20 | $1,441.52 | https://www.katom. | |
| 7 | | chairs | | 24 | | | $65.58 | $ 3.93 | $1,668.36 | https://sylvoxtv.com | |
| 8 | | big screen tvs | | 2 | | | $1,999.00 | $ 119.94 | $4,237.88 | https://www.websta | |
| 9 | | hamilton beach commercial milkshake maker | | 1 | | | $1,195.00 | $ 71.70 | $1,286.70 | https://www.bhphot | |
| 10 | | computer monitor | | 1 | | | $449.99 | $ 27.00 | $476.99 | https://squareup.coi | |
| 11 | | poa system | | 1 | | | $1,189.00 | $ 71.34 | $1,260.34 | https://www.alpineh | |
| 12 | | wall unit air conditioning system | | 1 | | | $3,479.00 | $ 208.74 | $3,687.74 | https://www.katom. | |
| 13 | | 6 burner cpg cooking performance group 2x2 griddle with backsplash with commercial hood | | 1 | | | $3,119.00 | $ 187.14 | $3,306.14 | https://www.websta | |
| 14 | | deep fryers by avantco | | 2 | | | $999.00 | $ 59.94 | $2,117.88 | https://www.websta | |
| 15 | | avantco refrigeration deli station that is 4' wide | | 1 | | | $1,349.00 | $ 80.94 | $1,429.94 | https://www.websta | |
| 16 | | serving tray/cart station | | 1 | | | $2,019.00 | $ 121.14 | $2,140.14 | https://www.websta | |
| 17 | | tongs | | 10 | | | $4.59 | $ 0.28 | $48.65 | https://www.websta | |
| 18 | | soup spoons | | 50 | | | $8.95 | $ 0.54 | $474.35 | https://www.websta | |
| 19 | | frying pans | | 7 | | | $50.99 | $ 3.06 | $378.35 | https://www.websta | |
| 20 | | bowls | | 30 | | | $23.99 | $ 1.44 | $762.88 | https://www.websta | |
| 21 | | strainers | | 10 | | | $25.49 | $ 1.53 | $270.19 | https://www.websta | |
| 22 | | drinking cups | | 20 | | | $5.99 | $ 0.36 | $126.99 | | |
| 23 | | insulated box-cambro to keep things warm | | 1 | | | $714.00 | $ 42.84 | $756.84 | https://www.katom. | |
| 24 | | allotment for all food, spices, freezer and fridge items | | 1 | | | $5,000.00 | $ 300.00 | $5,300.00 | | |
| 28 | | superior refrigerator stand up commercial unit | | 1 | | | $1,385.00 | $ 83.10 | $1,468.10 | https://www.katom. | |
| 29 | | large refrigerator | | 1 | | | $2,909.57 | $ 174.57 | $3,084.14 | https://www.rpmhai | |
| 30 | | glass door refrigerator | | 1 | | | $1,870.00 | $ 112.20 | $1,982.20 | AD_Bw5pTh3vuEGqI | |
| 31 | | genair wall ovens | | 2 | | | $3,199.00 | $ 191.94 | $6,781.88 | https://www.bestbu | |
| 32 | | food slicing machine/ deli slicer | | 2 | | | $552.95 | $ 33.18 | $1,172.25 | https://www.katom. | |
| 33 | | freeze machine for frozen drinks | | 1 | | | $349.99 | $ 21.00 | $370.99 | https://www.target. | |
| 34 | | extra large spatula | | 1 | | | $24.99 | $ 1.50 | $26.49 | https://www.weber. | |
| 35 | | kichenaid mixer | | 1 | | | $399.99 | $ 24.00 | $423.99 | https://www.target. | |
| 36 | | rice cooker | | 1 | | | $50.99 | $ 3.06 | $54.05 | https://www.target. | |
| 37 | | counter 6'x3' storage base cabinet | | 1 | | | $1,773.65 | $ 106.42 | $1,880.07 | https://www.homed | |
| 38 | | cutting boards | | 7 | | | $54.11 | $ 3.25 | $401.50 | https://www.ferguso | |
| 39 | | ansel fire protection system | | 1 | | | $5,500.00 | $ 330.00 | $5,830.00 | How Much Does ANS | |
| 40 | | sectional with ottoman | | 1 | | | $1,649.97 | $ 99.00 | $1,748.97 | https://www.ashleyf | |

Received County of Berks Prothonotary's Office on 04/08/2026 12:53 PM Prothonotary Docket No. 26-00690

| Item # | Room | Item Description | Model # | Quantity | Approx. Age (Years) | Item Age (Months) | Unit Cost (each) | Sales Tax (each) | Total Cost | LINKS | Receipt Page # |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 41 | | king size mattress | | 1 | | | $649.00 | $ 38.94 | $687.94 | https://www.nectars | |
| 42 | | king size box spring | | 1 | | | $380.00 | $ 22.80 | $402.80 | https://www.mattre | |
| 43 | | fire extinguisher | | 1 | | | $100.00 | $ 6.00 | $106.00 | https://www.imperia | |
| 44 | | commercial floor mats 3'x15' | | 1 | | | $156.23 | $ 9.37 | $165.60 | https://www.homed | |
| 45 | | planters | | 13 | | | $15.99 | $ 0.96 | $220.34 | https://www.amazo | |
| 46 | | wall hangings and art | | 16 | | | $149.96 | $ 9.00 | $2,543.32 | https://www.raymou | |
| 47 | | coffee table | | 1 | | | $329.00 | $ 19.74 | $348.74 | https://www.westel | |
| 48 | | floor lamp | | 1 | | | $129.99 | $ 7.80 | $137.79 | https://www.mybob | |
| 49 | | 6 string acoustic guitar | | 1 | | | $347.99 | $ 20.88 | $368.87 | https://www.focuspi | |
| 50 | | Washer | | 1 | | | $599.00 | $ 35.94 | $634.94 | https://www.lowes.c | |
| 51 | | Dryer | | 1 | | | $549.99 | $ 33.00 | $582.99 | https://www.bestbu | |

Trean Rec'd 04-16-2026

## State Public Adjusting Co

Received County of Berks Prothonotary's Office on 04/08/2026 12:53 PM Prothonotary Docket No. 26-00690

| | | | |
|---|---|---|---|
| Insured: | Salazar Cocina LLC | Cellular: | (201) 724-6612 |
| Property: | 440 Lehigh St. | E-mail: | salazarcocina@gmail.com |
| | Reading, PA 19601 | | |

| | | | |
|---|---|---|---|
| Claim Rep.: | Mike Lazarchick, WRT, FSRT, AMRT | Business: | (610) 780-5390 |
| Company: | SPAC | E-mail: | mikelazarchick@comcast.net |
| Business: | 511 Reading Ave. Unit 1 | | |
| | West Reading, PA 19611 | | |

| | | | |
|---|---|---|---|
| Estimator: | Mike Lazarchick, WRT, FSRT, AMRT | Business: | (610) 780-5390 |
| Company: | SPAC | E-mail: | mikelazarchick@comcast.net |
| Business: | 511 Reading Ave. Unit 1 | | |
| | West Reading, PA 19611 | | |

**Claim Number:** BM-BOP-24-01019          **Policy Number:** CBB-00078642-00          **Type of Loss:** Fire

| | | | |
|---|---|---|---|
| Date Contacted: | 9/8/2025 12:00 PM | | |
| Date of Loss: | 4/11/2024 12:00 PM | Date Received: | 9/8/2025 12:00 PM |
| Date Inspected: | 9/8/2025 12:00 PM | Date Entered: | 10/1/2025 12:00 PM |

| | |
|---|---|
| Price List: | PARE8X_OCT25 |
| | Restoration/Service/Remodel |
| Estimate: | SALAZAR-COCINA-LLC |

Trean Rec'd 04-16-2026

## State Public Adjusting Co

### SALAZAR-COCINA-LLC

#### Main Level



| Restaurant | | Height: 9' 11" |
|---|---|---|
| 1,014.81 SF Walls | | 622.40 SF Ceiling |
| 1,637.20 SF Walls & Ceiling | | 622.40 SF Floor |
| 69.16 SY Flooring | | 102.33 LF Floor Perimeter |
| 102.33 LF Ceil. Perimeter | | |

**Missing Wall - Goes to Floor**   3' X 6' 8"   **Opens into RESTAURANT_K**

| DESCRIPTION | QTY | REMOVE | REPLACE | TAX | O&P | TOTAL |
|---|---|---|---|---|---|---|
| 1. Clean suspended ceiling grid | 622.40 SF | 0.00 | 0.40 | 15.33 | 0.00 | 264.29 |
| 2. Clean light fixture - fluorescent | 10.00 EA | 0.00 | 18.43 | 11.09 | 0.00 | 195.39 |
| 3. Clean evaporative cooler diffuser | 3.00 EA | 0.00 | 20.44 | 3.68 | 0.00 | 65.00 |
| 4. Clean the walls | 1,014.81 SF | 0.00 | 0.46 | 28.66 | 0.00 | 495.47 |
| 5. Seal/prime (1 coat) then paint (2 coats) the walls | 1,014.81 SF | 0.00 | 1.65 | 21.31 | 339.14 | 2,034.89 |
| 6. Mask and prep for paint - tape only (per LF) | 102.33 LF | 0.00 | 0.77 | 0.31 | 15.82 | 94.92 |
| 7. Clean baseboard | 102.33 LF | 0.00 | 0.46 | 2.89 | 0.00 | 49.96 |
| 8. Clean concrete the floor | 622.40 SF | 0.00 | 0.39 | 17.88 | 48.62 | 309.24 |
| 9. Apply plant-based anti-microbial agent to the floor | 622.40 SF | 0.00 | 0.33 | 17.19 | 41.52 | 264.10 |
| 10. Remove Vinyl tile | 622.40 SF | 1.53 | 0.00 | 0.00 | 190.46 | 1,142.73 |
| *removal only | | | | | | |
| 11. R&R Snaplock Laminate - simulated wood flooring | 622.40 SF | 1.58 | 6.90 | 126.22 | 1,080.84 | 6,485.01 |
| 12. R&R Paneling | 1,014.81 SF | 0.40 | 3.07 | 51.76 | 714.64 | 4,287.79 |
| 13. R&R Exit sign - internal power | 2.00 EA | 16.82 | 270.67 | 29.28 | 120.84 | 725.10 |
| 14. R&R Service counter | 30.00 LF | 15.89 | 284.88 | 320.38 | 1,868.70 | 11,212.18 |
| 15. Content Manipulation charge - per hour | 30.00 HR | 0.00 | 52.82 | 0.00 | 316.92 | 1,901.52 |
| 16. Final cleaning - construction - Commercial | 622.40 SF | 0.00 | 0.27 | 12.10 | 33.62 | 213.77 |
| 17. Deodorize building - Hot thermal fog | 6,172.09 CF | 0.00 | 0.09 | 40.00 | 111.10 | 706.59 |

| Totals: Restaurant | | | | 698.08 | 4,882.22 | 30,447.95 |
|---|---|---|---|---|---|---|

Received County of Berks Prothonotary's Office on 04/08/2026 12:53 PM Prothonotary Docket No. 26-00690

Trean Rec'd 04-16-2026

**State Public Adjusting Co**

Received County of Berks Prothonotary's Office on 04/08/2026 12:53 PM Prothonotary Docket No. 26-00690



| **Restaurant Kitchen** | | | | | | **Height: 9' 11"** |
|---|---|---|---|---|---|---|
| 781.76 SF Walls | | | | 349.88 SF Ceiling | | |
| 1,131.64 SF Walls & Ceiling | | | | 349.88 SF Floor | | |
| 38.88 SY Flooring | | | | 78.83 LF Floor Perimeter | | |
| 78.83 LF Ceil. Perimeter | | | | | | |

| **Missing Wall - Goes to Floor** | | **3' X 6' 8"** | | **Opens into RESTAURANT** | | |
|---|---|---|---|---|---|---|
| **DESCRIPTION** | **QTY** | **REMOVE** | **REPLACE** | **TAX** | **O&P** | **TOTAL** |
| 18. Clean suspended ceiling grid | 349.88 SF | 0.00 | 0.40 | 8.62 | 0.00 | 148.57 |
| 19. Clean concrete the floor | 349.88 SF | 0.00 | 0.39 | 10.05 | 27.34 | 173.84 |
| 20. Clean light fixture - fluorescent | 3.00 EA | 0.00 | 18.43 | 3.33 | 0.00 | 58.62 |
| 21. Clean evaporative cooler diffuser | 2.00 EA | 0.00 | 20.44 | 2.45 | 0.00 | 43.33 |
| 22. Clean the walls | 781.76 SF | 0.00 | 0.46 | 22.07 | 0.00 | 381.68 |
| 23. Clean door / window opening (per side) | 3.00 EA | 0.00 | 17.01 | 3.07 | 0.00 | 54.10 |
| 24. Clean door (per side) | 1.00 EA | 0.00 | 9.41 | 0.58 | 0.00 | 9.99 |
| 25. Clean exterior door (per side) | 2.00 EA | 0.00 | 18.62 | 2.27 | 0.00 | 39.51 |
| 26. Clean range hood - Commercial | 1.00 EA | 0.00 | 27.72 | 1.67 | 0.00 | 29.39 |
| 27. Clean sink | 1.00 EA | 0.00 | 17.01 | 1.02 | 0.00 | 18.03 |
| 28. Clean baseboard | 78.83 LF | 0.00 | 0.46 | 2.23 | 0.00 | 38.49 |
| 29. Clean floor | 349.88 SF | 0.00 | 0.57 | 12.19 | 0.00 | 211.62 |
| 30. Furnace - heavy clean, replace filters and service - w/ AC | 1.00 EA | 0.00 | 455.74 | 0.93 | 91.32 | 547.99 |
| 31. Apply plant-based anti-microbial agent to the floor | 349.88 SF | 0.00 | 0.33 | 9.66 | 23.36 | 148.48 |
| 32. Final cleaning - construction - Commercial | 349.88 SF | 0.00 | 0.27 | 6.80 | 18.90 | 120.17 |
| 33. Deodorize building - Hot thermal fog | 3,469.59 CF | 0.00 | 0.09 | 22.49 | 62.46 | 397.21 |
| 34. Seal/prime (1 coat) then paint (2 coats) the walls | 781.76 SF | 0.00 | 1.65 | 16.42 | 261.26 | 1,567.58 |
| 35. Seal (1 coat) & paint (2 coats) baseboard | 78.83 LF | 0.00 | 2.74 | 0.99 | 43.40 | 260.38 |
| 36. Paint concrete the floor | 349.88 SF | 0.00 | 1.22 | 6.30 | 86.64 | 519.79 |
| 37. Paint door or window opening - 2 coats (per side) | 3.00 EA | 0.00 | 40.12 | 1.10 | 24.30 | 145.76 |
| 38. Prime & paint door slab only - exterior (per side) | 4.00 EA | 0.00 | 57.08 | 4.05 | 46.48 | 278.85 |
| 39. R&R Deadbolt | 1.00 EA | 12.61 | 57.09 | 1.93 | 14.32 | 85.95 |
| Totals: Restaurant Kitchen | | | | 140.22 | 699.78 | 5,279.33 |

SALAZAR-COCINA-LLC

10/3/2025          Page: 3

Trean Rec'd 04-16-2026

**State Public Adjusting Co**



**Rest-Storage** | Height: 9' 11"

| 451.21 SF Walls | 101.39 SF Ceiling |
|---|---|
| 552.60 SF Walls & Ceiling | 101.39 SF Floor |
| 11.27 SY Flooring | 45.50 LF Floor Perimeter |
| 45.50 LF Ceil. Perimeter | |

| DESCRIPTION | QTY | REMOVE | REPLACE | TAX | O&P | TOTAL |
|---|---|---|---|---|---|---|
| 40. Clean floor or roof joist system | 101.39 SF | 0.00 | 1.25 | 7.73 | 0.00 | 134.47 |
| 41. Clean light fixture - fluorescent | 2.00 EA | 0.00 | 18.43 | 2.22 | 0.00 | 39.08 |
| 42. Clean the walls | 451.21 SF | 0.00 | 0.46 | 12.74 | 0.00 | 220.30 |
| 43. Clean door (per side) | 2.00 EA | 0.00 | 9.41 | 1.16 | 0.00 | 19.98 |
| 44. Clean door / window opening (per side) | 2.00 EA | 0.00 | 17.01 | 2.04 | 0.00 | 36.06 |
| 45. Clean baseboard | 45.50 LF | 0.00 | 0.46 | 1.29 | 0.00 | 22.22 |
| 46. Clean floor | 101.39 SF | 0.00 | 0.57 | 3.53 | 0.00 | 61.32 |
| 47. Final cleaning - construction - Commercial | 101.39 SF | 0.00 | 0.27 | 1.97 | 5.48 | 34.83 |
| 48. Deodorize building - Hot thermal fog | 1,005.44 CF | 0.00 | 0.09 | 6.52 | 18.10 | 115.11 |
| 49. R&R Interior door unit | 1.00 EA | 25.22 | 342.15 | 16.27 | 76.74 | 460.38 |

| | | | | | | |
|---|---|---|---|---|---|---|
| Totals: Rest-Storage | | | | 55.47 | 100.32 | 1,143.75 |

**Rest.-Utility** | Height: 8'

| 141.33 SF Walls | 16.73 SF Ceiling |
|---|---|
| 158.06 SF Walls & Ceiling | 16.73 SF Floor |
| 1.86 SY Flooring | 17.67 LF Floor Perimeter |
| 17.67 LF Ceil. Perimeter | |

| DESCRIPTION | QTY | REMOVE | REPLACE | TAX | O&P | TOTAL |
|---|---|---|---|---|---|---|
| 50. Clean floor or roof joist system | 16.73 SF | 0.00 | 1.25 | 1.28 | 0.00 | 22.19 |
| 51. Clean suspended ceiling grid | 16.73 SF | 0.00 | 0.40 | 0.41 | 0.00 | 7.10 |
| 52. Clean light fixture - fluorescent | 1.00 EA | 0.00 | 18.43 | 1.11 | 0.00 | 19.54 |
| 53. Clean the walls | 141.33 SF | 0.00 | 0.46 | 3.99 | 0.00 | 69.00 |
| 54. Clean floor | 16.73 SF | 0.00 | 0.57 | 0.58 | 0.00 | 10.12 |
| 55. Clean baseboard | 17.67 LF | 0.00 | 0.46 | 0.50 | 0.00 | 8.63 |
| 56. Clean water heater | 1.00 EA | 0.00 | 30.86 | 1.86 | 0.00 | 32.72 |
| 57. Clean door (per side) | 1.00 EA | 0.00 | 9.41 | 0.58 | 0.00 | 9.99 |

Received County of Berks Prothonotary's Office on 04/08/2026 12:53 PM Prothonotary Docket No. 26-00690

Trean Rec'd 04-16-2026

## State Public Adjusting Co

### CONTINUED - Rest.-Utility

| DESCRIPTION | QTY | REMOVE | REPLACE | TAX | O&P | TOTAL |
|---|---|---|---|---|---|---|
| 58. Clean door / window opening (per side) | 1.00 EA | 0.00 | 17.01 | 1.02 | 0.00 | 18.03 |
| 59. Final cleaning - construction - Commercial | 16.73 SF | 0.00 | 0.27 | 0.32 | 0.90 | 5.74 |
| 60. Deodorize building - Hot thermal fog | 133.83 CF | 0.00 | 0.09 | 0.86 | 2.40 | 15.30 |
| Totals: Rest.-Utility | | | | 12.51 | 3.30 | 218.36 |



**Rest.Bath**      **Height: 8'**

190.67 SF Walls
226.15 SF Walls & Ceiling
3.94 SY Flooring
23.83 LF Ceil. Perimeter

35.49 SF Ceiling
35.49 SF Floor
23.83 LF Floor Perimeter

| DESCRIPTION | QTY | REMOVE | REPLACE | TAX | O&P | TOTAL |
|---|---|---|---|---|---|---|
| 61. Clean the walls and ceiling | 226.15 SF | 0.00 | 0.46 | 6.39 | 0.00 | 110.42 |
| 62. Clean light fixture - fluorescent | 1.00 EA | 0.00 | 18.43 | 1.11 | 0.00 | 19.54 |
| 63. Clean register - heat / AC | 1.00 EA | 0.00 | 7.38 | 0.44 | 0.00 | 7.82 |
| 64. Clean door (per side) | 2.00 EA | 0.00 | 9.41 | 1.16 | 0.00 | 19.98 |
| 65. Clean door / window opening (per side) | 2.00 EA | 0.00 | 17.01 | 2.04 | 0.00 | 36.06 |
| 66. Clean mirror | 1.00 SF | 0.00 | 0.93 | 0.06 | 0.00 | 0.99 |
| 67. Clean toilet | 1.00 EA | 0.00 | 28.57 | 1.71 | 0.00 | 30.28 |
| 68. Clean toilet seat | 1.00 EA | 0.00 | 6.17 | 0.37 | 0.00 | 6.54 |
| 69. Clean baseboard | 23.83 LF | 0.00 | 0.46 | 0.67 | 0.00 | 11.63 |
| 70. Clean floor | 35.49 SF | 0.00 | 0.57 | 1.24 | 0.00 | 21.47 |
| 71. Final cleaning - construction - Commercial | 35.49 SF | 0.00 | 0.27 | 0.68 | 1.92 | 12.18 |
| 72. Deodorize building - Hot thermal fog | 283.89 CF | 0.00 | 0.09 | 1.84 | 5.12 | 32.51 |
| 73. Paint concrete the floor | 35.49 SF | 0.00 | 1.22 | 0.64 | 8.78 | 52.72 |
| 74. Seal/prime (1 coat) then paint (2 coats) part of the walls | 95.33 SF | 0.00 | 1.65 | 2.00 | 31.86 | 191.15 |
| 75. Clean medicine cabinet | 1.00 EA | 0.00 | 18.42 | 1.33 | 3.68 | 23.43 |
| 76. R&R Interior door unit | 1.00 EA | 25.22 | 342.15 | 16.27 | 76.74 | 460.38 |
| 77. Paint door slab only - 2 coats (per side) | 2.00 EA | 0.00 | 47.67 | 1.18 | 19.30 | 115.82 |
| Totals: Rest.Bath | | | | 39.13 | 147.40 | 1,152.92 |

SALAZAR-COCINA-LLC      10/3/2025      Page: 5

Received County of Berks Prothonotary's Office on 04/08/2026 12:53 PM Prothonotary Docket No. 26-00690

Trean Rec'd 04-16-2026

## State Public Adjusting Co

| Total: Main Level | | 945.41 | 5,833.02 | 38,242.31 |
|---|---|---|---|---|
| Line Item Totals: SALAZAR-COCINA-LLC | · | 945.41 | 5,833.02 | 38,242.31 |

## Grand Total Areas:

| | | | | | |
|---|---|---|---|---|---|
| 2,579.78 | SF Walls | 1,125.88 | SF Ceiling | 3,705.65 | SF Walls and Ceiling |
| 1,125.88 | SF Floor | 125.10 | SY Flooring | 268.17 | LF Floor Perimeter |
| 0.00 | SF Long Wall | 0.00 | SF Short Wall | 268.17 | LF Ceil. Perimeter |
| 1,125.88 | Floor Area | 1,197.26 | Total Area | 2,579.78 | Interior Wall Area |
| 1,688.71 | Exterior Wall Area | 157.50 | Exterior Perimeter of Walls | | |
| 0.00 | Surface Area | 0.00 | Number of Squares | 0.00 | Total Perimeter Length |
| 0.00 | Total Ridge Length | 0.00 | Total Hip Length | | |

Received County of Berks Prothonotary's Office on 04/08/2026 12:53 PM Prothonotary Docket No. 26-00690

Trean Rec'd 04-16-2026

**State Public Adjusting Co**

## Summary

| | |
|---|---:|
| Line Item Total | 31,463.88 |
| Material Sales Tax | 617.34 |
| Cleaning Mtl Tax | 7.03 |
| Subtotal | 32,088.25 |
| Overhead | 2,916.51 |
| Profit | 2,916.51 |
| Cleaning Sales Tax | 321.04 |
| **Replacement Cost Value** | **$38,242.31** |
| Less Deductible | (500.00) |
| **Net Claim** | **$37,742.31** |

Mike Lazarchick, WRT, FSRT, AMRT

SALAZAR-COCINA-LLC                                    10/3/2025          Page: 7

Trean Rec'd 04-16-2026



Main Level

10/3/2025    Page: 8



othonotary's Office on 04/08/2026 12:53 PM Prothonotary Docket No. 26-00690

SALAZAR-COCINA-LLC

Trean Rec'd 04-16-2026

Received County of Berks Prothonotary's Office on 04/08/2026 12:53 PM Prothonotary Docket No. 26-00690

CN†

# CONSUMER NOTICE FOR TENANTS
## THIS IS NOT A CONTRACT

(Licensee) **Peter B Gustis** _____ hereby states that with respect to this property (describe property)

**440 Lehigh st , Reading, PA 19601-4005** _____ , I am acting in

the following capacity: (check one)

[X]  (i) Owner/Landlord of the Property;

[ ]  (ii) A direct employee of the Owner/Landlord; OR

[ ]  (iii) An agent of the Owner/Landlord pursuant to a property management or exclusive leasing agreement

I acknowledge I have received this Notice:

Date:  **05/18/2021**    Jose salazar

| | |
|---|---|
| Print (Consumer) | Print (Consumer) |
| Signed (Consumer) | Signed (Consumer) |
| **106 Norfolk street apt.10 New York, NY 10002** | |
| Address (Optional) | Address (Optional) |
| **(646)210-6498** | |
| Phone Number (Optional) | Phone Number (Optional) |

I certify that I have provided this Notice: _____ Peter B Gustis _____    05/18/2021

(Licensee)    Date

04/02

Springer Realty Group, 740 Springdale Dr suite 100 Exton, PA 19341        Phone: 6102899219    Fax: 8553704711    440 Lehigh St
Peter Gustis        Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026   www.zipLogix.com

Trean Rec'd 04-16-2026

# COMMERCIAL LEASE

**CL**

This form recommended and approved for, but not restricted to use by, the members of the Pennsylvania Association of Realtors (PAR)

## PARTIES

| | |
|---|---|
| TENANT(S): Jose salazar | LANDLORD(S):  Axh Llc |
| 646 210 6498 | |
| Authorized Signer | Authorized Signer |
| TENANT'S PRINCIPAL PLACE OF BUSINESS: | LANDLORD'S PRINCIPAL PLACE OF BUSINESS: |
| 106 Norfolk street apt.10 | 1631 Perkiomen Ave Reading Pa 19602 |
| New York, NY 10002 | |
| TENANT'S EMAIL ADDRESS: | LANDLORD'S EMAIL ADDRESS: |
| Salazarjose309@gmail.com | zuriel128@hotmail.com |

## PREMISES

A portion of the real property known as Suite Number(s) ___3___ , _____ floor(s), consisting of approximately _____ square feet and located at _____ 440 Lehigh st _____

_____ Reading _____ Unit(s) _____ ZIP 19601-4005 .

in the municipality of _____ city of reading _____ , County of _____ berks _____ ,

in the Commonwealth of Pennsylvania, with improvements consisting of 1 first floor unit.

## TENANT'S RELATIONSHIP WITH PA LICENSED BROKER

☐ No Business Relationship (Tenant is not represented by a broker)

| | |
|---|---|
| Broker (Company) **Springer Realty Group** | Licensee(s) (Name) **Peter B Gustis** |
| Company Address _____ | State License # _____ |
| _____ | Direct Phone(s) _____ |
| Company Phone _____ | Cell Phone(s) _____ |
| Company Fax _____ | Email **pete@petegustis.com** |
| Broker is (check only one): | Licensee(s) is (check only one): |
| ☐ Tenant Agent (Broker represents Tenant only) | ☐ Tenant Agent (all company licensees represent Buyer) |
| ☒ Dual Agent (See Dual and/or Designated Agent box below) | ☐ Tenant Agent with Designated Agency(only Licensee(s) named above represent Buyer) |
| | ☒ Dual Agent (See Dual and/or Designated Agent box below) |

☐ Transaction Licensee (Broker and Licensee(s) provide real estate services but do not represent Tenant)

## LANDLORD'S RELATIONSHIP WITH PA LICENSED BROKER

☐ No Business Relationship (Tenant is not represented by a broker)

| | |
|---|---|
| Broker (Company)  **Springer Realty Group** | Licensee(s) (Name) **Peter B Gustis** |
| Company Address **740 Springdale Dr suite 100, Exton, PA  19341** | State License # _____ |
| | Direct Phone(s) _____ |
| Company Phone **(610)209-9219** | Cell Phone(s)  **(610)209-9219** |
| Company Fax  **(855)370-4711** | Email **Pete@PeteGustis.com** |
| Broker is (check only one): | Licensee(s) is (check only one): |
| ☐ Landlord Agent (Broker represents Landlord only) | ☐ Landlord Agent (all company licensees represent Landlord) |
| ☒ Dual Agent (See Dual and/or Designated Agent box below) | ☐ Landlord Agent with Designated Agency (only Licensee(s) named above represent Landlord) |
| | ☒ Dual Agent (See Dual and/or Designated Agent box below) |

☐ Transaction Licensee (Broker and Licensee(s) provide real estate services but do not represent Landlord)

## DUAL AND/OR DESIGNATED AGENCY

A Broker is a Dual Agent when a Broker represents both Buyer and Seller in the same transaction. A Licensee is a Dual Agent when a Licensee represents Buyer and Seller in the same transaction. All of Broker's licensees are also Dual Agents UNLESS there are separate Designated Agents for Buyer and Seller. If the same Licensee is designated for Buyer and Seller, the Licensee is a Dual Agent.
By signing this Agreement, Buyer and Seller each acknowledge having been previously informed of, and consented to, dual agency, if applicable.

Tenant Initials: _____    CL  Page 1 of 13    Landlord Initials: _____

Pennsylvania Association of REALTORS®

COPYRIGHT PENNSYLVANIA ASSOCIATION OF REALTORS® 2016
09/16

Received County of Berks Prothonotary's Office on 04/08/2026 12:53 PM Prothonotary Docket No. 26-00690

Trean Rec'd 04-16-2026

*Received County of Berks Prothonotary's Office on 04/08/2026 12:53 PM Prothonotary Docket No. 26-00690*

1. **LEASE DATE AND RESPONSIBILITIES**

For and in consideration of the rents, covenants and agreements contained herein and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, and intending to be legally bound hereby, Landlord leases to Tenant, and Tenant accepts from Landlord, the Premises described above, and any riders, supplements, addenda and exhibits which are made a part of this Lease, dated **May 18, 2021**                    .

2. **DEFINITIONS**

(A) "Additional Rent" shall mean all sums, charges or amounts of whatever nature (other than Base Rent) to be paid by Tenant to Landlord in accordance with the provisions of this Lease and any addenda including, but not limited to, taxes, water, electricity, security deposits, insurance premiums, repairs, and security services, whether or not such sums, charges or amounts are referred to as "Additional Rent." Landlord shall have the same remedies for default in the payment for Additional Rent as for default in the payment of Base Rent.

(B) "Base Rent" shall mean the minimum rent due as set forth in Paragraph 5.

(C) "Common Area Maintenance" (CAM) shall mean Tenant's pro rata share of the cost to maintain, clean or repair the common areas and amenities of the Premises as set forth in Paragraph 7.

(D) "Improvements" shall mean any equipment, device, capital improvement or replacement to Landlord's Premises (i) required to achieve economies in operating, maintaining and/or repairing the Premises; (ii) required by any governmental authority, board or agency having jurisdiction over Landlord's Premises; or (iii) recommended or required by any insurance carrier in connection with provisions of insurance for Landlord's Premises.

(E) "Landlord" shall mean the party named above as Landlord and any subsequent person(s) who succeeds to the rights of Landlord herein, each of whom shall have the same rights and remedies as he would have possessed had he originally signed this Lease as Landlord.

(F) "Operating Expenses" shall mean all expenses incurred in operating, maintaining, managing and repairing the building, land and all improvements, fixtures and equipment located thereon, including but not limited to sidewalks, parking areas, driveways and landscaping as set forth in Paragraph 7.

(G) "Real Property Taxes" shall mean all ad valorem, real property, personal property or similar taxes, charges and assessments, whether general, special or otherwise, which are levied, assessed or imposed during the Term by any governmental authority upon Landlord's Premises or any other property of Landlord, real or personal, located on Landlord's Premises, and any increase or decrease thereof. "Real Property Taxes" shall also include any tax that shall be levied or assessed in addition to, or in lieu of, such real or personal property taxes. It shall not include federal, state or local income taxes, any franchise, estate or inheritance tax, or any real estate transfer, documentary or intangible tax imposed by reason of sale or financing on Landlord's Premises.

(H) "Rent" shall mean the total sums due and payable to Landlord.

(I) "Tenant" shall mean the party named above as Tenant, as well as its or their respective heirs, personal representatives, successors and assigns, each of which shall be under the same obligations, liabilities and disabilities, and have only such rights, privileges and powers as he would have possessed had he originally signed this Lease as Tenant.

3. **STARTING AND ENDING DATES OF LEASE (also called "Term")**

(A) The Commencement Date shall be (select one):
- ☐ Substantial Completion: _____
- ☐ Occupancy Date: _____
- ☐ Signing Date: _____
- ☒ Rent Commencement Date: **July 1, 2021**
- ☐ Other: _____

Tenant's failure to take possession of the Premises for any reason when possession is delivered by Landlord shall not delay the Commencement Date.

(B) The Term of this Lease shall begin on the Commencement Date and expire on _____ **May 18, 2021** _____ ("Expiration Date"). This date in subsequent years shall operate as the renewal date, if any.

(C) As used in this Lease, Substantial Completion shall mean that Tenant may utilize the Premises for Tenant's proposed use without material interference with Tenant's business activities.

4. **RENEWAL TERM**

(A) This Lease will renew as indicated below unless proper notice to terminate is given. In the event that the Lease is not renewed for any reason whatsoever, and Tenant does not vacate the Premises as set forth herein, Tenant will be considered a "hold over Tenant" and the provisions of Paragraph 32 shall apply.

(B) ☐ Option 1 - Automatic Termination

This Lease will automatically terminate at the expiration of the Term unless Landlord and Tenant enter into a written extension or renewal of the Lease prior to the last day of the Term("Renewal Term").

(C) ☒ Option 2 - Automatic Renewal
1. If neither party terminates this Lease as set forth herein, this Lease will automatically renew for ☐ _____ additional month(s) (3 if not specified) OR ☒ __5__ additional year(s) (1 if not specified) ("Renewal Term").
2. It is hereby mutually agreed that either party may terminate this Lease by providing written notice to the other party no less than __90__ days (90 if not specified) prior to the expiration of the Term or any subsequent Renewal Term.

Tenant Initial ___  CL Page 2 of 13  Landlord Initials ___

Trean Rec'd 04-16-2026

Received County of Berks Prothonotary's Office on 04/08/2026 12:53 PM Prothonotary Docket No. 26-00690

(D) ☐ Option 3 – Tenant's Option to Renew

Landlord and Tenant agree that Tenant has the right to exercise _____ option(s) (1 if not specified) to extend the Lease, provided Tenant is not in continuing, material default or breach at the time the option is exercised. Each option shall be for a term identical to the Term identified in Paragraph 3 ("Renewal Term"). Tenant shall provide Landlord no less than _____ days (60 if not specified) written notice of Tenant's intention to exercise its option to renew the Lease.

(E) If notice of termination is given later than required, Rent is due for the entirety of the Renewal Term.

(F) Any renewal will be according to the terms of this Lease unless otherwise modified in a writing signed by Landlord and Tenant.

(G) At the Expiration Date or sooner termination of this Lease, Tenant shall peaceably surrender to Landlord possession of the Premises in the same condition as it is hereby required to be kept by Tenant, excepting reasonable wear and tear and changes in condition due to fire or other casualty.

  1. Tenant may remove its trade fixtures from the Premises and shall repair any damage to the Premises caused thereby. Tenant may not remove any alterations, additions or improvements other than trade fixtures. Such alterations, additions or improvements shall become the property of Landlord as of the Expiration Date or sooner termination of this Lease. Lighting fixtures, heating and air conditioning equipment, plumbing and electrical systems and fixtures, and floor coverings shall not be deemed to be trade fixtures whether installed by Tenant or by anyone else, and shall not be removed from the Premises by or on behalf of Tenant at any time.

  2. Landlord may, in Landlord's sole discretion, conduct an inspection of the Premises. Landlord shall provide written notice to Tenant of the date of the inspection so that representatives of both Landlord and Tenant may attend. Following such inspection, Landlord shall provide Tenant with written notice within _____ days (10 if not specified) of such inspection setting forth those conditions for which Tenant is responsible to repair or restore under the Lease.

  3. Tenant may, at Tenant's election, either (i) make such repairs or restorations; or (ii) notify Landlord that Tenant desires Landlord to perform such repairs and restorations at Landlord's actual, reasonable costs. If Tenant elects not to perform the repairs and restorations, Tenant shall pay Landlord's actual, reasonable costs promptly after receiving notice that Landlord has completed the same. Such notice shall include an invoice or other record setting forth, in reasonable detail, Landlord's actual costs of repairs and restorations.

**5.  BASE RENT**

(A) Rent is due without demand, abatement, deduction or set-off at the address set forth on Page 1 of this Lease, unless otherwise stated.

(B) Base Rent shall be paid in ☒ monthly ☐ quarterly ☐ annual ☐ other: _____ installments of $ 1,200.00 _____ on or before the __1__ day of each ☒ month ☐ quarter ☐ other: _____ ("Due Date").

(C) Base Rent shall be calculated as $ _____ /sq. ft. OR $ _____ per month amounting to Base Rent of $ _____ (U.S. Dollars) per year.

☒ If checked, Base Rent is subject to an incremental rent increase during the Term of this Lease. Each increase in Base Rent owed to Landlord will be no more than _____ % or $ 50.00 _____ in each instance and, following proper notice to Tenant, will take effect on the anniversary of the Commencement Date set forth in this Lease unless otherwise stated here: Per year _____ .

(D) Any Base Rent installment, Additional Rent, or any other payment not received by Landlord within _____ days (5 if not specified) of the Due Date shall be subject to a late charge of _____ % of the installment due or $ 75.00 _____ ("Late Charge").

(E) Tenant agrees that all payments will be applied against outstanding Additional Rent that is due before they will be applied against the current Base Rent due. When there is no outstanding Additional Rent, payment will be applied to the month's Base Rent that is currently due.

(F) Landlord will accept the following methods of payment: ☒ Cash ☒ Money Order ☒ Personal Check ☐ Credit Cards (additional fees may apply) ☒ Cashier's Check ☐ Other: _____ . Landlord, at Landlord's sole discretion, reserves the right to change or modify the acceptable methods of payment if any method fails (a check is returned or not honored, credit card is declined, etc.), by providing Tenant with notice not less than ten (10) days before the next Base Rent installment is due.

(G) Tenant will pay a fee of $ 75.00 _____ for any payment that is returned or declined by any financial institution for any reason. Notwithstanding any other provisions in this Lease, if payment is returned or declined, Late Charges will be calculated from the Due Date. Any late charges will continue to apply until a valid payment is received.

**6.  SECURITY DEPOSIT**

(A) A security deposit of $ 2,400.00 _____ will be paid in U.S. Dollars to Landlord or Landlord's representative, and held in escrow by Landlord or Landlord's representative as named here: Axh Llc _____ .

(B) The Security Deposit will be held for the performance by Tenant of all of its covenants, obligations and agreements set forth in this Lease, but in no event shall Landlord be obligated to apply the Security Deposit to Rent or other charges in arrears, or damages for Tenant's default hereunder; however, Landlord may so apply the Security Deposit at its option. Landlord's right to possess the Premises for Tenant's default, or other such reason, shall not be affected by the fact that Landlord holds the Security Deposit.

(C) The Security Deposit, if not so applied by Landlord, shall be returned to Tenant within _____ (60 if not specified) days after this Lease terminates, provided that Tenant has vacated the Premises and delivered the same to Landlord as herein provided.

(D) In the event of any transfer of Landlord's interests in the Premises, Landlord shall have the right to transfer its interest in the Security Deposit following proper notice to Tenant, whereupon Landlord shall be released of all liability with respect to such a Security Deposit, and Tenant shall look solely to such transferee for the return of the same in accordance with the terms of the Lease.

Tenant Initials: _J_/_S_     CL Page 3 of 13     Landlord Initials: _KH_

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026   www.zipLogix.com     448 Lehigh St

Trean Rec'd 04-16-2026

*Received County of Berks Prothonotary's Office on 04/08/2026 12:53 PM Prothonotary Docket No. 26-00690*

7. **ADDITIONAL RENT**

(A) As Additional Rent and or costs, Tenant agrees to timely pay all or Tenant's proportionate share of the following:

☐ Common Area Maintenance (CAM)
☒ Improvements
☐ Real Property Taxes
☒ Operating Expenses

(B) Tenant's prorata share of CAM expenses are _____ % (100 if not specified) of the total cost. Upon demand for payment, Landlord is required to submit to Tenant an accounting statement which documents the actual cost of the CAM expenses. Tenant is hereby notified that CAM expenses may fluctuate and are subject to modification based upon actual charges.

(C) Unless otherwise indicated, Tenant agrees to pay all Operating Expenses, including but not limited to outdoor maintenance, utilities, service contracts, insurance, structural maintenance and repairs, and government assessments. Those Operating Expenses included in CAM will be paid by Tenant according to Paragraph 7 (B), above.

☐ Operating Expense Addendum to Commercial Lease (PAR Form OXA) is attached and made part of this Lease.

8. **PAYMENT SCHEDULE**

| | Total Due | Due Date | Paid | Balance Due |
|---|---|---|---|---|
| (A) First month's Base Rent | $ 1,200.00 | 07/01/2021 | $ | $ 1,200.00 |
| (B) Security Deposit | $ 1,200.00 | 07/01/2021 | $ | $ 1,200.00 |
| (C) Additional Rent | $ 1,200.00 | 07/01/2021 | $ | $ 1,200.00 |
| (D) Other | $ 700.00 | 01/01/2022 | $ | $ 700.00 |
| TOTALS: | $ 4,300.00 | | $ | $ 4,300.00 |

9. **SIGNS**

(A) All signs are subject to approval of Landlord, in its sole discretion. In addition, all signs must be in accordance and comply with, and if needed, be approved by, _____city of reading_____ (municipality) and any other necessary governmental authority, prior to installation. Upon request of Landlord, Tenant shall provide Landlord with a scaled drawing of the sign, including colors, for Landlord's approval.

(B) Tenant shall remove all signs upon the expiration or earlier termination of the Lease, and such removal shall be at Tenant's sole cost and expense. Tenant shall repair any damage and fill any holes caused by such removal. In the event of a breach of this Lease, and in addition to all other remedies given to Landlord, Landlord shall have the privilege and right to remove any and all signs and restore the Premises to its prior condition, and Tenant shall be liable for any and all expenses so incurred by Landlord.

10. **LANDLORD'S REPRESENTATIONS**

Landlord warrants and represents that:

(A) As of the date of execution and during the term of this Lease, and any extensions or renewals thereto, Landlord has the full power and authority to execute and deliver this Lease, and to perform its obligations under this Lease.

(B) As of the date of execution and during the term of this Lease, and any extensions or renewals thereto, none of the terms, conditions or obligations of this Lease shall be precluded by or cause a breach of any other agreement, mortgage, contract or other instrument or document to which Landlord is a party.

(C) Upon paying Rent and performing its obligations as required under this Lease, Tenant shall be permitted to peaceably and quietly have, hold and enjoy the Premises.

(D) As of the Occupancy/Commencement Date, all exterior portions of the Premises, including any paved areas, parking areas and sidewalks, shall be in satisfactory condition and repair, and usable for the purposes intended.

11. **ACCEPTANCE; POSSESSION**

(A) By taking possession of the Premises, Tenant affirms and represents that the Premises is in good and tenable condition, meets Tenant's needs for the use set forth in Paragraph 13, and that all work that was to be performed by Landlord pursuant to the terms of this Lease, if any, has been substantially completed. By taking possession, Tenant is accepting the Premises in "as is" condition.

(B) If Landlord is unable to give Tenant possession of the Premises on the Occupancy Date by reason of the holding over of a previous occupant or due to any cause beyond Landlord's control, Landlord shall not be liable in damages to Tenant. During the period that Landlord is unable to give possession, all rights and remedies of both parties, including Tenant's obligation to pay Rent, shall be suspended.

(C) If Tenant cannot take possession within _____ days (60 if not specified) of the Occupancy Date, Tenant's exclusive rights are to:

1. Change the Occupancy Date of the Lease to the day when Premises is available. Tenant will not owe or be charged Base Rent until Property is available; OR

2. Terminate the Lease and have all money already paid as Rent, Additional Rent or Security Deposit returned, with no further liability on the part of Landlord or Tenant.

12. **GOVERNMENTAL REGULATIONS**

Tenant shall, in the use and occupancy of the Premises, comply with all applicable laws, ordinances, notices and regulations of all governmental and municipal authorities, and with the regulations of the insurers of the property. Tenant shall keep in force at all times all licenses, consents and permits necessary for the lawful conduct of Tenant's business at the Premises. Nothing in the foregoing shall require Tenant to perform any work or make any improvements or repairs that Landlord is required to make pursuant to other provisions of this Lease.

Tenant Initials: ___ S    CL Page 4 of 13    Landlord Initials: ___

Trean Rec'd 04-16-2026

Received County of Berks Prothonotary's Office on 04/08/2026 12:53 PM Prothonotary Docket No. 26-00690

### 13. TENANT'S USE AND COVENANTS

(A) Tenant shall use the Premises only for restaurant

and in accordance with the use permitted under all applicable Federal, State and municipal laws, ordinances and regulations. In the event Tenant should elect to change the use of the Premises from what is identified herein, Tenant shall be permitted to do so, subject to Landlord's prior written consent.

(B) Tenant shall not bring into, use or permit to be kept on the Premises any dangerous, explosive, toxic, hazardous or obnoxious substance. Tenant will not maintain any hazardous substance or pollutant or contaminate as defined in 42 U.S.C. § 9601, et seq., or any hazardous substance, material and/or waste, including solid, liquid or gaseous materials, which are defined to be hazardous under any applicable federal, state or local laws, regulations or administrative or judicial decisions. Tenant shall indemnify and hold harmless Landlord from any and all liability for costs of remediation resulting from Tenant's violation of this Paragraph. This indemnification is intended to survive the expiration or other termination of this Lease.

(C) Tenant agrees that it will comply with all laws, ordinances, codes, orders, rules and/or regulations, requirements of any governmental body, agency, department, board or similar organization that has jurisdiction over the Premises, arising out of or affecting Tenant's use and occupancy of the Premises or the business conducted therein.

(D) Tenant covenants and agrees that Tenant, its employees, agents, invitees, licensees and other visitors, as permitted under this Lease, shall observe faithfully and comply strictly with such reasonable Rules and Regulations as Landlord or Landlord's agents may, after written notice to Tenant, from time-to-time adopt with respect to the building, property or Premises. Rules and Regulations for use of the property and common areas are attached and made part of this Lease.

(E) Tenant may not do or permit anything to be done in or about the Premises that will in any way obstruct or interfere with the rights of other tenants on the property, or injure or annoy them; use or allow the Premises to be used for any improper, illegal or objectionable purpose, cause, maintain, or permit any nuisances in, on or about the Premises; or commit or allow to be committed any waste in, on or about the Premises.

### 14. ASSIGNMENT AND SUBLETTING

(A) Tenant shall not assign, mortgage, pledge or otherwise transfer or encumber this Lease or the Premises, nor subject or permit any part of the Premises to be occupied by any other person, firm or corporation other than Tenant or its employees, invitees, agents and servants, without Landlord's prior written approval, which approval shall be in Landlord's sole but reasonable discretion.

(B) In the event Landlord approves Tenant's request for assignment and/or subletting, each assignee or sublessee of Tenant's interest shall assume and be deemed to have assumed this Lease, and shall be and remain liable jointly and severally with Tenant for all payments, and for the due performance of all terms, covenants, conditions and provisions contained in this Lease.

(C) No assignment or subletting shall be binding upon Landlord unless the assignee or subtenant shall deliver to Landlord an instrument in recordable form containing a covenant of assumption by the assignee or sublessee, but the failure or refusal of an assignee or sublessee to execute the same shall not release the assignee or sublessee from its liability as set forth herein.

### 15. TENANT'S ALTERATIONS AND REPAIRS

(A) Tenant shall not, without first obtaining Landlord's prior written consent (which consent shall not be unreasonably withheld, conditioned or delayed) on each occasion, make any improvements or repairs to the Premises. Tenant may, without the consent of Landlord, make minor improvements or repairs to the interior of the Premises provided that:

1.  Each repair costs no more than $ _____ ($1,000.00 if not specified),
2.  They do not impact the structural strength, integrity, operation or value of the building, AND
3.  Tenant shall take all steps required or permitted by law to avoid the imposition of any mechanics' lien upon the property, improvements, or land.

(B) Improvements consisting of equipment, devices or improvements required by a governmental authority, board or agency in connection with Tenant's Permitted Use shall be at the sole cost and expense of Tenant, and Tenant shall remove same at the termination of the Lease.

(C) All other alterations, improvements and additions, except for minor alterations and improvements, become part of the Premises and are the property of Landlord without payment therefor by Landlord, and shall be surrendered to Landlord at the end of the Term or any Renewal Term.

(D) If prior to the end of the Term or Renewal Term, Tenant provides written notice to Landlord that Tenant intends to remove all or any such alterations and improvements made by Tenant during its occupancy, or the parts thereof specified by Landlord, from the Premises, Tenant shall repair all damage caused by installation and removal.

(E) All work shall be performed in a workmanlike manner.

### 16. MECHANICS' LIENS

(A) Should any mechanics' lien or other lien be filed against the property or any part thereof by reason of construction, alteration, addition, improvement or installation performed by or on behalf of Tenant, or is a result of Tenant's acts or omissions, Tenant shall, within _____ days (30 if not specified) following receipt of notice of the existence of such lien, cause the same to be cancelled and discharged of record.

(B) If Tenant has not paid or desires to contest any claim of lien, Tenant agrees to indemnify and hold Landlord harmless from, and defend Landlord against any liability, loss, damage, costs and all related expenses (including reasonable attorneys' fees and costs) arising out of Tenant's non-payment or contest of such liens. Tenant shall also execute such indemnity agreements as would be

Tenant Initial _____     CL Page 5 of 13     Landlord Initials: _____

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026     www.zipLogix.com     448 Lehigh St

Trean Rec'd 04-16-2026

necessary to induce a title company to insure over any such lien. Tenant shall not be obligated to update Landlord's title insurance policy at the time of the contest.

(C) If final judgment establishing the validity or existence of any contested lien is entered, Tenant shall pay and satisfy the same at once.

## 17. LANDLORD'S RIGHT TO ACCESS

In addition to any other rights reserved to Landlord under this Lease, Landlord shall have the following rights to access the Premises.

(A) With Landlord's prior consent, Tenant shall have the right to install various locks on and within the Premises. Tenant shall furnish Landlord with copies of any such keys or combinations to provide access only in the event of an emergency or as otherwise set forth in this Lease. Tenant shall have a continuing obligation for the duration of the Lease, and any extensions thereto, to provide Landlord with any keys and/or passcodes necessary to enter the Premises.

(B) Landlord and its agents, contractors and invitees shall have the right to enter the Premises any reasonable time and after reasonable notice (i) for inspection, (ii) to supply any service that Landlord is obligated to provide under the terms and conditions of this Lease; (iii) to show the Premises to prospective buyers, lenders or tenants; (iv) to affix and display "For Sale" or "For Rent" signs; and (v) to make repairs, alterations, additions or improvements to the Premises or other portion of Landlord's Property, which the examination or exhibition in making of any repairs to the Premises shall not unreasonably interfere with Tenant's use.

(C) When possible, Landlord will give Tenant _____ hours (24 if not specified) notice of the date, time and reason for the visit. In emergencies, Landlord may enter the Premises without notice. If Tenant is not present, Landlord will notify Tenant who was there and for what purpose within _____ hours (24 if not specified) of the visit.

(D) Landlord shall not be liable in any manner to Tenant by reason of such entry or performance of repairs, alterations and/or additions to the Premises, and the obligations of Tenant hereunder shall not be affected, absent grossly negligent or intentional actions or failures to act attributable to Landlord, or any person or entity engaged by or on behalf of Landlord to perform such work. Landlord agrees (except in the case of Tenant's default hereunder) that all repairs, alterations and additions (excepting only emergency work or work that must, in Landlord's judgment, be performed on an urgent basis) by Landlord shall be performed in a reasonable manner at reasonable times, subject to the limitations contained herein.

(E) Following notice from either Party of intention to terminate or not renew this Lease, or failure of Tenant to exercise its option to renew this Lease, Landlord may commence efforts to market the Premises which may include placing a "For Rent" sign on or near the Premises. All of said signs shall be placed upon such part of the Premises as Landlord may elect, and may contain such information as Landlord shall require. Landlord or Landlord's representative may use lock boxes, and take pictures and video of the Premises. Prospective purchasers or tenants may inspect the Premises at such times as the parties may agree, so long as they are accompanied by Landlord or Landlord's representative.

## 18. INDEMNIFICATION

(A) Beginning on the Commencement Date and continuing throughout Tenant's possession of the Premises, Tenant shall indemnify Landlord, its partners, directors, officers, agents and employees from and against any and all losses, whether or not based on negligence, costs (including reasonable attorneys' fees), claims, damages, liabilities, suits, actions and causes of action, whether legal or equitable, sustained or arising by reason of Tenant's default in any of its obligations under this Lease, or of the fault or neglect of Tenant or of the failure of Tenant or any of its officers, agents, employees or invitees, to fulfill any duty toward the public or to Landlord under this Lease, or to any person or persons whomever, that Tenant, by reason of its occupancy or use of the Premises may owe.

(B) Beginning on the Commencement Date and continuing throughout Tenant's possession of the Premises, Landlord shall indemnify, defend and hold Tenant harmless from and against any and all third-party claims, suits and causes of action, whether legal or equitable, and costs (including reasonable attorneys' fees) sustained or arising by reason of the intentional or grossly negligent acts or omissions of Landlord, its employees, agents, licensees or contractors.

(C) This Paragraph shall survive the expiration or earlier termination of this Lease with respect to any occurrence that occurs prior to the expiration or such earlier termination of the Term or exercised Renewal Term.

## 19. INSURANCE

(A) Tenant, at Tenant's expense, shall obtain comprehensive general liability insurance coverage against any and all claims for injuries to persons or property occurring on the Premises by reason of Tenant's use, occupancy or operation in and on the Premises. No later than the Signing Date, Tenant will provide Landlord with written documentation of said insurance coverage showing that the Premises will be insured as of the Commencement Date set forth in Paragraph 3(A). Tenant shall maintain insurance coverage throughout the Term of this Lease, and any Renewal Term(s).

(B) Such insurance shall include Landlord as an additional insured and shall require at least _____ days (30 if not specified) advance written notice of cancellation or nonrenewal be given to Landlord. Such insurance shall, at all times, provide coverage in an amount not less than $ 1,000,000.00 _____ ($1,000,000.00 if not specified) in the aggregate. The policy or policies of Tenant's liability insurance shall provide that a covered loss will be paid notwithstanding any act or negligence of Landlord or Tenant, and for payment of claims on an occurrence basis.

(C) Tenant agrees to keep its property located on the Premises insured, including all floor and wall coverings, and Tenant's trade fixtures, equipment and other personal property from time-to-time situated on the Premises. The amount of coverage shall be such as determined by Tenant to adequately compensate Tenant for its loss, and if the proceeds of such insurance are not used for repair

Tenant Initials: CI IS          CL Page 6 of 13          Landlord Initials: _____

Received County of Berks Prothonotary's Office on 04/08/2026 12:53 PM Prothonotary Docket No. 26-00690

Trean Rec'd 04-16-2026

or replacement of the property so insured, or if this Lease is terminated following a casualty, the proceeds applicable to the leasehold improvements shall be paid to Landlord and the proceeds applicable to Tenant's personal property shall be paid to Tenant.

(D) Landlord will notify Tenant of any recommendations made by Landlord's insurance carrier, as well as any codes or standards recommended by the National Fire Protection Association ("NFPA") which, in Landlord's sole but reasonable opinion, are relevant to the terms of the lease, and Tenant shall comply with any and all such reasonable recommendations. Landlord acknowledges that no NFPA codes or standards are currently recommended and Landlord is not aware of any imminent recommendations, unless set forth here _____

(E) Tenant will comply with all reasonable recommendations made by Landlord's insurance carrier, Tenant's insurance carrier, or with NFPA codes or standards that have been reasonably recommended. Tenant will not do, nor permit anything to be done, or neglect to do anything, or prevent anything to be brought onto the Premises that will (i) cause an increase in the premium that may be charged during the Term of this Lease on any fire or extended coverage insurance carried on the structure, or (ii) cause any increase in the premiums that may be charged during the Term of this Lease on any fire and/or extended coverage insurance carried on the structure and exterior of the property. If, by any reason of any act or omission of Tenant, the fire and extended coverage insurance premiums are increased, Tenant shall pay, as Additional Rent hereunder, the amount by which the premiums are increased. Landlord will notify Tenant of any NFPA codes or standards that are recommended, and of any notices it received concerning changes in rates.

## 20. DESTRUCTION OR DAMAGE

(A) If, during the Term of this Lease or any extension thereto, the Premises is damaged by fire or any other casualty, including, without limitation, natural disaster, and not occurring through the intentional or negligent acts or omissions of Tenant or those claiming under Tenant, or their employees respectively, Tenant shall promptly notify Landlord and Landlord shall repair the damaged portions of the Premises, including any improvements or alterations made by Landlord (but not any of Tenant's property therein or improvements or alterations made by Tenant). If, however, in Landlord's reasonable judgment, the damage would require more than _____ days (120 if not specified) of work to repair, or if the insurance proceeds (excluding rent insurance) that Landlord anticipates receiving must be applied to repay any mortgages encumbering the improvements, or are otherwise inadequate to pay the costs of such repair, Landlord shall have the right to terminate this Lease by so notifying Tenant. Such notice shall specify a termination date not less than _____ days (30 if not specified) after its receipt by Tenant.

(B) If the damage to the Premises is only partial and such that the Premises can be restored to its former condition within a reasonable time, Landlord may enter and repair, and this Lease shall not be affected, except that Base Rent shall be apportioned and suspended while such repairs are being made. If the Premises is so slightly damaged by fire or other casualty as mentioned above so as not to render the Premises unfit for occupancy, Landlord agrees the same shall be promptly repaired.

(C) Landlord shall not be liable for any damage, compensation or claim by reason of inconvenience or annoyance from the necessity of repairing any portion of the Premises, or improvements thereon, the interruption and the use of the Premises, or the termination of this Lease by reason of the destruction of the Premises.

## 21. FORCE MAJEURE

If either Party should be delayed or hindered, or prevented from performing any of the acts required in this Lease by reason of war, fire or other casualty, acts of terrorism, natural or environmental disasters, strike, walk-out, labor trouble, shortage of materials or equipment, or the inability to procure the same, failure of power, restrictive government laws or regulations, riot, insurrection, declaration of martial law, or other causes beyond the reasonable control of the party delayed, the performance of such act shall be excused for the period of such delay. This Paragraph shall not excuse Tenant, after the Commencement Date, from a timely payment of Rent or any other amounts required under this Lease.

## 22. CONDEMNATION/EMINENT DOMAIN

(A) In an instance of total condemnation, where all of the property is taken through an exercise of the power of eminent domain, this Lease shall terminate on the date when possession of the property was acquired by the condemning authority. The right to terminate this Lease under this Paragraph may be exercised by either party so notifying the other party in writing not later than _____ days (30 if not specified) prior to such date.

(B) In an instance of partial condemnation, Landlord shall have the right to terminate this Lease on the date when the condemned portion of the Premises is to be delivered to the condemning authority and neither party shall have any further responsibility or liability under this Lease or to the other where only part of the Premises is taken and:

    1.   The condemnation award is insufficient to restore the remaining portion of the Premises, or if such award must be applied to repay any mortgages encumbering improvements on the property; OR

    2.   In addition to a portion of the Premises, a portion of the improvements or land is taken and Landlord deems it commercially unreasonable to continue leasing all or a portion of the remaining space and the improvements.

(C) In an instance of partial condemnation, Tenant shall have the right to terminate this Lease on the date when the condemned portion of the Premises is to be delivered to the condemning authority and neither party shall have any further responsibility or liability under this Lease or to the other where a substantial portion of the Premises is so taken and it is commercially impossible for Tenant to continue its business with in the Premises.

Tenant Initial: _____  CL Page 7 of 13  Landlord Initials: _____

Received County of Berks Prothonotary's Office on 04/08/2026 12:53 PM Prothonotary Docket No. 26-00690

Trean Rec'd 04-16-2026

(D) If this Lease is not terminated after a partial condemnation, then after the date when the condemned portion of the Premises is delivered to the condemning authority, the Rent shall be reduced in the proportion that the condemned area bears to the entire area of the Premises.

(E) Tenant shall have the right to claim against the condemning authority only for removal and moving expenses and business relocation damages that may be separately payable to Tenant in general under Pennsylvania law, provided such payment does not reduce the award otherwise payable to Landlord. Subject to the foregoing, Tenant hereby waives all claims against Landlord with respect to a condemnation, and hereby assigns to Landlord all claims against the condemning authority including, without limitation, all claims for leasehold damages and diminution in value of Tenant's leasehold estate.

**23. SUBORDINATION, NON-DISTURBANCE AND ATTORNMENT; ESTOPPEL CERTIFICATES**

(A) This Lease shall be subject and subordinate at all times to the lien of any mortgages and other encumbrances now or hereafter placed upon the Premises or property. Tenant shall execute and deliver to Landlord upon demand an instrument acceptable to Landlord subordinating this Lease to the lien of any present or future mortgage or encumbrance as may be requested by any mortgagee of the property. At the request of any holder of any such mortgage, or the purchase of such mortgage at any foreclosure sale, or at any sale under a power of sale contained in such mortgage, Tenant shall attorn to and recognize such mortgagee or purchaser as Landlord under this Lease for the balance of the Term, including any renewal or extensions hereof subject to all the terms of this Lease. Provided that Tenant is not in default of this Lease, its tenancy shall not be disturbed by Landlord, but shall continue in full force and effect. Landlord agrees to use reasonable efforts, but shall not be obligated to obtain from any future mortgagee a non-disturbance agreement for the benefit of Tenant on a form customarily issued by such mortgage.

(B) Tenant shall, from time-to-time, execute and deliver within _____ days (5 if not specified) following receipt of a request from Landlord or Landlord's mortgagee, grantee or lessor, a recordable instrument evidencing such subordination and Tenant's agreement to attorn to the holder of such prior right. Notwithstanding the foregoing, any mortgagee may, at any time, subordinate its mortgage to this Lease, without Tenant's consent, but with notice in writing to Tenant, whereupon this Lease shall be deemed prior to such mortgage without regard to their respective dates. The term "mortgage" includes mortgages, deeds of trust, or similar instruments, and all modifications, consolidations, extensions, renewals or replacements hereof, or substitutes therefor.

(C) On or before the date Tenant first takes possession of the Premises, Tenant agrees to execute and cause all guarantors to execute, a tenant acceptance certificate and an estoppel letter in such form as Landlord may reasonably request.

**24. DEFAULT**

(A) Any of the following events shall constitute a default under this Lease by Tenant:

1. Failure by Tenant to pay, when due, any Rent or any other sum payable by Tenant under this Lease within _____ days (10 if not specified) after written notice by Landlord to Tenant that such sum is past due.

2. Tenant vacates the Premises before the proper termination of this Lease, including any Renewal Term.

3. Tenant fails to observe or perform any of Tenant's other obligations as set forth in this Lease.

4. Tenant commits an act of bankruptcy or files a petition, or commences any proceedings under any bankruptcy or insolvency law.

5. A petition is filed or a proceeding is commenced against Tenant under any bankruptcy or insolvency law, and is not dismissed within sixty (60) days.

6. Tenant is adjudicated bankrupt.

7. A receiver or other official is appointed for Tenant, or for a substantial part of Tenant's assets, or for Tenant's interest in this Lease.

8. Any attachment or execution is filed or levied against a substantial part of Tenant's assets or Tenant's interest in this Lease, or any of Tenant's property on the Premises that is not insured.

(B) If Landlord fails to observe or perform any of Landlord's obligations as set forth in this Lease and Tenant has given Landlord not less than _____ days (30 if not specified) written notice of the default, or if the default is of a character so that more than _____ days (30 if not specified) to cure are required and Landlord fails to use its best efforts to cure the default after receiving notice from Tenant, then after such _____ days (30 if not specified) notice, Tenant shall have the right, but not the obligation, to cure the default on behalf of Landlord, at the expense of Landlord, and may seek reimbursement from Landlord by means of any available legal process.

**25. NOTICE OF DEFAULT**

(A) Notwithstanding anything to the contrary in this Lease, and except in connection with the provisions of Paragraph 24(A) (2), (4), (5), (6), (7), or (8) for which no notice or cure period shall be given or permitted, if Tenant has failed or refused to perform, or has violated any of the non-monetary terms, covenants, conditions or agreements contained in this Lease, Landlord shall so notify Tenant in writing.

(B) Upon receiving such Notice of Default, Tenant shall correct the matter(s) complained of within _____ days (30 if not specified) after receipt of written notice, or if more than such _____ days (30 if not specified) are required to correct with reasonable diligence the matter(s) complained of in such notice, Tenant shall begin to correct them within such _____ days (30 if not specified) and pursue such corrective action with reasonable diligence thereafter, providing Landlord with timely written confirmation thereof. Tenant shall diligently follow through with such correction(s) to conclusion.

Tenant Initials: _J_ _S_          CL Page 8 of 13          Landlord Initials: _____

Received County of Berks Prothonotary's Office on 04/08/2026 12:53 PM Prothonotary Docket No. 26-00690

Trean Rec'd 04-16-2026

Received County of Berks Prothonotary's Office on 04/08/2026 12:53 PM Prothonotary Docket No. 26-00690

(C) In the event the default is a failure to pay Rent or other monetary obligations contained in this Lease, Landlord shall provide written notice within _____ business days (5 if not specified) of a right to cure, and Tenant's right to cure shall exist no more than _____ times (2 if not specified) in any _____ - month (12 if not specified) period, and such payment shall include the Late Charge(s)

**26. WAIVER OF NOTICE**

Tenant hereby waives all rights to legal notice, whether provided by statute or common law, and agrees that prior written notice delivered as provided herein with respect to proceedings to recover possession in the event of default, at any time shall be sufficient.

**27. RIGHT TO CURE**

If Tenant shall default in performing any of its obligations under this Lease, Landlord may (but shall not be obligated), in addition to Landlord's other rights and remedies, and without waiver of such default, cure such default on behalf of Tenant, thereby entering and possessing the Premises if deemed necessary by Landlord, provided that Landlord shall have first given Tenant notice of such default and Tenant shall have failed within _____ days (30 if not specified) following receipt of said notice to cure or diligently pursue the cure of said default (which notice and opportunity to cure shall not be required in case of actual emergency). Tenant, upon demand of Landlord, shall reimburse Landlord for all actual costs (including reasonable attorneys' fees) incurred by Landlord with respect to such default and, if Landlord so elects, Landlord's efforts to cure the same.

**28. ALTERNATIVE DISPUTE RESOLUTION**

(A) Landlord and Tenant agree to cooperate by supporting and fully participating in all efforts to resolve disputes, complaints, claims and other problems that arise or are related to this Lease through mediation and, if not successfully resolved, then through binding arbitration in accordance with the principles of the Uniform Arbitration Act, 42 Pa. C.S.A. §7301, et seq., and other related laws of the Commonwealth of Pennsylvania. The parties make the foregoing commitment with full knowledge that by agreeing to submit disputes to binding arbitration, the parties are agreeing not to resort to the courts or the judicial system, and are waiving their rights to do so.

(B) When submitting a dispute to a mediator, the parties shall agree upon one mediator from a list of mediators available through the local court or local Federal district court or through such other agency as the parties may mutually agree. The parties agree to share all expenses of mediation equally.

(C) Should the parties not be able to resolve their dispute through mediation, each party will voluntarily submit to binding arbitration and shall appoint their own arbitrator. These arbitrators shall select a mutual third arbitrator, thus forming an "Arbitration Panel" that will then proceed to schedule the matter for disposition. In the event that the individual arbitrators are unable to agree on a neutral arbitrator, either party shall have the right to petition the local Court of Common Pleas to appoint a neutral arbitrator. In order to initiate the binding arbitration process, either party will submit a written request for arbitration to the other party, within a reasonable time following the unsuccessful mediation of their dispute. If the parties are unable to agree upon a location for arbitration, then the arbitration will be held at the local courthouse.

**29. LANDLORD'S REMEDIES**

(A) CONFESSION OF JUDGMENT EJECTMENT - IN THE EVENT THAT, AND WHEN THIS LEASE SHALL BE DETERMINED BY TERM, COVENANT, LIMITATION OR CONDITION BROKEN AS AFORESAID, DURING THE LEASE TERM, AND ALSO WHEN AND AS SOON AS THE LEASE TERM HEREBY CREATED SHALL HAVE EXPIRED, IT SHALL BE LAWFUL FOR ANY ATTORNEY, AS ATTORNEY FOR LANDLORD, TO CONFESS JUDGMENT AND EJECTMENT IN ANY COMPETENT COURT AGAINST TENANT AND ALL PERSONS CLAIMING UNDER TENANT FOR THE RECOVERY BY LANDLORD OF POSSESSION OF THE PREMISES, WITHOUT ANY LIABILITY ON THE PART OF THE SAID ATTORNEY, FOR WHICH THIS LEASE SHALL BE A SUFFICIENT WARRANT WHEREUPON, IF LANDLORD SO DESIRES, A WRIT OF POSSESSION WITH CLAUSES FOR COSTS MAY ISSUE FORTHWITH, WITH OR WITHOUT ANY PRIOR WRIT OR PROCEEDING WHATSOEVER. IF FOR ANY REASON AFTER SUCH ACTION HAS BEEN COMMENCED, THE SAME SHALL BE DETERMINED AND THE POSSESSION OF THE PREMISES REMAINS IN OR RESTORES TO TENANT, LANDLORD SHALL HAVE THE RIGHT IN THE EVENT OF ANY SUBSEQUENT DEFAULTS TO CONFESS JUDGMENT IN EJECTMENT AGAINST TENANT IN THE MANNER AND FORM HEREIN AND BEFORE SET FORTH, TO RECOVER POSSESSION OF THE PREMISES FOR SUCH SUBSEQUENT DEFAULT. NO SUCH DETERMINATION OF THIS LEASE NOR RECOVERING POSSESSION OF THE PREMISES SHALL DEPRIVE LANDLORD OF ANY REMEDIES OR ACTION AGAINST TENANT FOR RENT OR FOR DAMAGES DUE OR TO BECOME DUE FOR THE BREACH OF ANY CONDITION OR COVENANT NOR THE RESORTS TO ANY WAIVER OF THE RIGHT TO INSIST UPON THE FORFEITURE, AND TO OBTAIN POSSESSION IN THE MANNER PROVIDED HEREIN.

(B) AFFIDAVIT REQUIRED - IN ANY ACTION IN EJECTMENT, LANDLORD SHALL FIRST CAUSE TO BE FILED IN SUCH ACTION AN AFFIDAVIT MADE BY IT OR SOMEONE ACTING FOR IT, SETTING FORTH THE FACTS NECESSARY TO AUTHORIZE THE ENTRY OF JUDGMENT OF WHICH FACTS SUCH AFFIDAVIT SHALL BE CONCLUSIVE EVIDENCE; AND IF A TRUE COPY OF THIS LEASE IS FILED IN SUCH ACTION, IT SHALL NOT BE NECESSARY TO FILE THE ORIGINAL AS A WARRANT OF ATTORNEY, ANY RULE OF COURT, CUSTOM OR PRACTICE TO THE CONTRARY NOTWITHSTANDING.

(C) Tenant releases Landlord and to any and all who appear for Landlord, from all procedural errors in said proceedings. Except as set forth above, Tenant expressly waives the benefits of laws, now or hereinafter enforced, exempting any goods on the Premises, or elsewhere from distraint, levy or sale in any legal proceeding taken by Landlord to enforce any rights under this Lease.

Tenant Initials: _____    CL. Page 9 of 13    Landlord Initials: _____

Trean Rec'd 04-16-2026

(D) No act or forbearance by Landlord shall be deemed a waiver or election of any right or remedy by Landlord with respect to Tenant's obligations hereunder, unless and to the extent that Landlord shall execute and deliver to Tenant a written instrument to such effect, and any such written waiver by Landlord shall not constitute a waiver or relinquishment for the future of any obligation of Tenant. Landlord's acceptance of any payment from Tenant (regardless of any endorsement on any check or writing accompanying such payment) may be applied by Landlord to Tenant's obligations then due hereunder in any priority as Landlord may elect, and such acceptance by Landlord shall not operate as an accord and satisfaction, or constitute a waiver of any right or remedy of Landlord with respect to Tenant's obligations hereunder. All remedies provided to Landlord herein shall be cumulative.

**30. PAYMENT OF TENANT'S OBLIGATIONS BY LANDLORD**

All terms, covenants, agreements and conditions to be performed by Tenant under this Lease shall be performed by Tenant at Tenant's sole cost and expense. If Tenant fails to pay any sum of money, other than Rent, required to be paid by Tenant under this Lease, or if Tenant shall fail to perform any other act that it is obligated to perform under this Lease, and if such failure(s) shall continue beyond any grace period or cure period as set forth in this Lease, Landlord may, without waiving or releasing Tenant from any of Tenant's obligations, make such payment or perform such task or other act on Tenant's behalf. All sums paid or incurred by Landlord and all incidental costs thereto (including reasonable attorneys' fees) shall be Tenant's sole cost and responsibility, and shall be deemed Additional Rent.

**31. ABANDONMENT**

(A) In the event of termination of this Lease in any manner whatsoever, Tenant shall immediately remove Tenant's goods and effects, and those of any other person claiming under Tenant or subtenancies assigned to it, and quit and deliver the Premises to Landlord peacefully and quietly.

(B) Goods and effects not removed by Tenant after termination of this Lease, or within _____ hours (72 if not specified) after a termination by reason of Tenant's default, shall be considered abandoned.

(C) Landlord shall give Tenant notice of right to reclaim abandoned property pursuant to applicable local law, and thereafter dispose of the same as it deems expedient, including in storage and public warehouse or elsewhere at the cost and for the account of Tenant. Tenant shall promptly upon demand reimburse Landlord for any expense incurred by Landlord in connection with storing or disposing of Tenant's goods and effects, which obligation shall survive the termination or expiration of this Lease.

**32. HOLDING OVER**

(A) This Lease shall expire absolutely and without notice on the last day of the Term or any renewal thereof. If Tenant, with the prior written consent of Landlord, retains possession of the Premises or any part thereof after the termination of this Lease by expiration of the Term or otherwise, a month-to-month tenancy shall be deemed to exist. Tenant shall continue to pay all Rent, plus ordinary maintenance, taxes, insurance and all other charges due under this Lease. Such holdover tenancy may be terminated by Landlord or Tenant upon _____ days (30 if not specified) written notice by either party to the other party.

(B) If such holding over exists without Landlord's prior written consent, Tenant shall pay Landlord, as partial compensation for such unlawful retention, an amount calculated on a per diem basis for each day of such continued unlawful retention equal to _____ % (150 if not specified) of the Rent for the time Tenant remains in possession. Such payments for unlawful retention shall not limit any rights or remedies of Landlord resulting by reason of the wrongful holding over by Tenant, nor shall such unlawful retention create any right of Tenant to continue in possession of the Premises. All other terms and provisions of this Lease then in effect shall remain in effect.

**33. PRESERVATION OF LANDLORD'S ENFORCEMENT RIGHTS**

Landlord's acceptance of Rent or any amount due and owing, or failure to enforce any right under this Lease shall not waive any other rights that Landlord may have hereunder. Any attempt to collect Rent and/or other amounts due and owing by one proceeding shall not waive Landlord's right to collect the same by any other proceeding.

**34. RECORDING**

Neither this Lease, nor any assignment of this Lease, shall be recorded by Tenant.

**35. TENANT'S JOINT AND SEVERAL LIABILITY**

If two or more individuals, corporations, partnerships, or other business associations, or any combination of two or more, shall sign this Lease as Tenant(s), the liability of each such individual, corporation, partnership or other business association to pay Base Rent, pay Additional Rent and to perform all other obligations hereunder to be performed by Tenant shall be deemed to be joint and several. If Tenant named in this Lease shall be a partnership or other business association, the members of which are, by virtue of statute or general law, subject to personal liability, the liability of each such member shall be joint and several.

**36. TRANSFER OF LANDLORD'S INTEREST; LIMITATION TO LIABILITY**

(A) Notwithstanding any provision of this Lease to the contrary, in the event of the sale or other transfer of Landlord's interest in the property, Landlord shall immediately notify Tenant in writing at the address set forth in Paragraph 50. Upon the successful completion of the sale or other transfer of Landlord's interest in the property, Landlord shall be released and discharged from all covenants, agreements and obligations of Landlord, whether previously accrued or thereafter accruing.

(B) Liability of Landlord under this Lease shall be limited to its interest in Landlord's property, and any judgment against Landlord shall be satisfied solely out of the proceeds of the sale of its interest in the property, and any judgment so rendered shall not give rise to any right of execution or levy against any of Landlord's other assets.

(C) Landlord shall have no personal liability to any successor in interest with respect to any of the provisions of this Lease or any obli-

Tenant Initials: J S          CI. Page 10 of 13          Landlord Initials: [signature]

Received County of Berks Prothonotary's Office on 04/08/2026 12:53 PM Prothonotary Docket No. 26-00690

Trean Rec'd 04-16-2026

gation arising from this Lease. Tenant shall look solely to the equity of the then-owner of the property for satisfaction of remedies by Tenant in the event of a breach by Landlord of any of its covenants, agreements or obligations hereunder.

(D) In no event shall Landlord be liable to Tenant for consequential or punitive damages for any reason whatsoever.

**37. TIME IS OF THE ESSENCE**

All times and dates identified for the performance of any obligations of this Lease are of the essence and are binding.

**38. CHOICE OF LAW**

This Lease shall be construed in accordance with and governed by the laws of the Commonwealth of Pennsylvania.

**39. ATTORNEY'S FEES**

If either party institutes legal proceedings against the other to enforce any provision of this Lease, or otherwise with respect to any dispute arising out of this Lease, in any legal proceeding that is final and unappealable, the losing party shall, within thirty (30) days after receipt of a detailed statement, reimburse the prevailing party for their reasonable attorneys' fees and legal costs incurred.

**40. CONSTRUCTION**

(A) In construing this Lease, the terms "Lease," "agreement" and "Agreement" shall be synonymous; the term "Lease" shall also include all exhibits, addenda and riders hereto. The singular shall be deemed to include the plural, and the plural the singular. All references to any specific party shall be gender neutral, and shall include their respective personal representatives, successors and permitted assigns.

(B) Where the provisions of this Lease refer to the duties and/or responsibilities of Tenant, the term "Tenant" shall be construed, wherever reasonable, to include Tenant's agents, employees, officers and assigns.

**41. HEADINGS**

The section and paragraph headings in this Lease are for convenience only and are not intended to indicate all of the matter in the sections that follow them. They shall have no effect whatsoever in determining the rights, obligations or intent of the parties.

**42. SUCCESSORS AND ASSIGNS**

Subject to the restrictions on transfer, assignment and subletting, the terms, conditions and covenants of this Lease shall be binding upon and shall inure to the benefit of each of the parties, their heirs, personal representatives, successors and/or permitted assigns. When more than one party shall be Tenant under this Lease, or "Tenant" wherever used in this Lease shall be deemed to include all Tenants, jointly and severally.

**43. BROKERS**

It is expressly understood and agreed between the parties hereto that the herein named Broker(s), their licensees, employees and any officer or partner are acting only as agent for the party that hired them, and no other, and will in no case whatsoever be held liable, either jointly or severally, to either party for the performance of any term, covenant or condition of this Lease, or for any damages that arise from the breach, default or non-performance thereof.

**44. LEASE INTERPRETATION; PRIOR REPRESENTATION**

(A) The parties acknowledge that each has been represented by legal counsel in negotiating this Lease, or has had the opportunity to be so represented, and that each intends that the provisions of this Lease not be interpreted or construed against either party due to the fact that such party may have been responsible for the drafting of this Lease. The parties acknowledge that in the course of negotiating this Lease, their representatives gradually reached agreement on the terms set forth in this Lease.

(B) The parties acknowledge that none of the prior oral and written agreements between them, and none of the representations on which either of them has relied, relating to the subject matter of this Lease, shall have any force or effect whatsoever, except as and to the extent that such agreements and representations have been incorporated into this Lease.

**45. SEVERABILITY**

If any term or provision of this Lease or the application of any term or provision of this Lease to any person or circumstance is finally judged to be invalid or unenforceable, the remainder of this Lease shall not be affected (including any attempted application of the invalid or unenforceable term or provision to the other person or circumstance). Landlord and Tenant hereby acknowledge and agree that they would have agreed upon each term and provision contained in this Lease irrespective of the fact that one or more term or provision was contrary to the law, or during the Term or Renewal Term or extension thereof are found to be contrary to the law.

**46. RIGHTS CUMULATIVE**

Unless expressly provided to the contrary in this Lease, each and every one of the rights, remedies and benefits provided by this Lease shall be cumulative and shall not be exclusive of any other such right, remedy or benefit allowed at law or inequity.

**47. EXECUTION AND COUNTERPARTS**

This Lease may be executed in one or more counterparts, each of which shall be deemed to be an original, and all such counterparts together shall constitute one-in-the-same Lease of the parties. To facilitate execution of this Lease, the parties may initially execute and exchange by telephone, facsimile or email counterparts of the signature pages to be promptly supplemented by exchange of hardcopies.

**48. ENTIRE AGREEMENT**

This Lease and any attached exhibits and addenda constitute the entire agreement between Landlord and Tenant with respect to Landlord's Premises, and there are no promises, agreements, conditions or understandings, whether oral, written or digital, between them other than as are herein set forth. Neither this Lease nor any of its provisions may be altered, amended, changed, waived, discharged or terminated orally, but only by an instrument in writing signed by the parties.

**49. AUTHORITY**

(A) The person(s) executing this Lease on behalf of Landlord do/does hereby represent and warrant that Landlord is a duly authorized

Tenant Initials _____    CL Page 11 of 13    Landlord Initials: _____

448 Lehigh St

Received County of Berks Prothonotary's Office on 04/08/2026 12:53 PM Prothonotary Docket No. 26-00690

Trean Rec'd 04-16-2026

and validly existing _____ (nature of entity) under the laws of _____ (state), that Landlord is authorized to do business in the Commonwealth of Pennsylvania, that Landlord has full rights, power and authority to enter into this Lease, and that each person signing on behalf of Landlord is authorized to do so.

(B) The person(s) executing this Lease on behalf of Tenant do/does hereby represent and warrant that Tenant is a duly authorized and validly existing _____ (nature of entity) under the laws of _____ (state), that Tenant is authorized to do business in the Commonwealth of Pennsylvania, that Tenant has full rights, power and authority to enter into this Lease, and that each person signing on behalf of Tenant is authorized to do so.

**50. NOTICES**

(A) Notices shall be in writing and shall be deemed properly served three (3) business days after depositing in the United States postal service, as registered or certified mail, return receipt requested, postage prepaid, or upon receipt when sent by overnight express carrier with a request that the addressee sign a receipt evidencing delivery, and addressed as follows, or to any other address furnished in writing by any of the foregoing.

TO TENANT:
100 Norfolk street apt.10
New York, NY 19602
TO LANDLORD:
1631 Perkiomen Ave, Reading, PA 19602

(B) Any change of address furnished by either party shall comply with the notice requirements of this Paragraph, and shall include a complete outline of the current notice of addresses to be used for all parties, including electronic mail addresses.

**51. SPECIAL CLAUSES**

(A) The following are part of this Lease if checked:
- Change of Lease Terms Addendum (PAR Form CLT)
- Floorplan of Premises

(B) Additional Terms:
tenant had free occupancy until july 1, 2021 at that time 3,600 is due for first, last and security deposit.
The rent increase is $50 per year, this is a 5 year term.
also the tenant is responsible for all utilities and property maintenance including snow removal.
the CAM charge is yearly and is $700. per year payable starting Jan 1, 2022 and due each year term.
The Ansul System and hood are attached to the property and not includes in any sale nor will not be removed by tenant.
no other terms apply unless by written contract.

*[handwritten:] $5 2 ... after the 6th of each month $50 ... for a late notice. ... need to take the tenant to court. 5/18/20... [initials]*

Tenant Initials: _____     Landlord Initials: _____

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026   www.zipLogix.com

440 Lehigh St

Trean Rec'd 04-16-2026

NOTICE BEFORE SIGNING: If Tenant or Landlord has legal questions, Tenant or Landlord is advised to consult an attorney. Landlord and Tenant have negotiated the terms and conditions of this Lease, including any and all addenda hereto, and have initialed any and all changes made, and identify this Date _____ as the "Signing Date" of this Lease.

TENANT AUTHORIZED SIGNER __José Salazar_____ DATE 5/18/21
José salazar

Title _____ DATE _____

TENANT AUTHORIZED SIGNER _____
646 210 6498

Title _____ DATE _____

TENANT AUTHORIZED SIGNER _____

Title _____ DATE _____

TENANT AUTHORIZED SIGNER _____

Title _____ DATE _____

CO-SIGNER _____

Title _____ DATE _____

CO-SIGNER _____

Title _____ DATE 5/18/21

LANDLORD AUTHORIZED SIGNER _____
Ash Llc

Title _____ DATE _____

LANDLORD AUTHORIZED SIGNER _____

Title _____

### LANDLORD TRANSFERS LEASE TO A NEW LANDLORD

_____ (current Landlord) now transfers to

As part of payment received by Landlord. _____ (new landlord) his heirs and estate, this Lease and the right to receive the Rents and other benefits.

CURRENT LANDLORD _____ DATE _____

Title _____ DATE _____

CURRENT LANDLORD _____

Title _____ DATE _____

NEW LANDLORD _____

Title _____ DATE _____

NEW LANDLORD _____

Title _____

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026  www.zipLogix.com

448 Lehigh St

Received County of Berks Prothonotary's Office on 04/08/2026 12:53 PM Prothonotary Docket No. 26-00690

Trean Rec'd 04-16-2026

Received County of Berks Prothonotary's Office on 04/08/2026 12:53 PM Prothonotary Docket No. 26-00690

# EXHIBIT "B"

Trean Rec'd 04-16-2026

Received County of Berks Prothonotary's Office on 04/08/2026 12:53 PM Prothonotary Docket No. 26-00690

*not a legal interpretation and do not alter or supplement any insurance policy. Not all products are available in all areas, and certain restrictions may apply. Please see Coterie's Terms & Conditions and Privacy Policy for more information.*

---------------------------------------------------------------

On Monday, November 17, 2025 at 3:04:38 PM Mike Lazarchick <mikelazarchick@comcast.net> wrote:

11-17-25

Good afternoon Oscar,

We have not received any communication from you since your 10-17-25 email stating that you would be in touch to move this claim ahead. Since that time, we have left several voicemail messages, and on 11-5-25 we submitted the insured's itemized losses along with their Sworn Statement in Proof of Loss and requested payment.   Please respond with full payment as soon as possible. If you believe there are any issues with the insured's claim, we ask that you notify us immediately, issue payment for any undisputed amounts you acknowledge as owed, and clearly specify any items you are reserving for further review. The insured has already gone approximately 1.5 years without meaningful communication, direction, or payment.   We understand that both you and our firm were recently reassigned to this claim, and we prefer to move forward constructively rather than focus on the prior 1.5 years of inaction. Our goal is simply to resolve this claim promptly and in accordance with the insured's rights and the applicable claims-handling standards.   Please call
 Regards,   Mike Lazarchick SPAC 610-780-5390

> On 11/12/2025 10:41 AM EST Mike Lazarchick <mikelazarchick@comcast.net> wrote:
>
> Subject: Claim Follow-Up and Request for Response   Date: November 12, 2025   Good morning Oscar,   We are requesting payment and a written response regarding this claim.   This claim is now over a year old. An advance of $2,500 was issued, and since that time no other meaningful work appears to have been done. The insured's original public adjuster, Doyle Adjusting, resigned on June 21, 2024, without notifying the insured. As a result, more than 13 months passed without action or communication regarding the status of the claim — an outcome that was plainly unfair to the insured.   On September 8, 2025, the insured retained our firm to move this claim forward. On that same date, we emailed our Notice of Assignment to Coterie and left a voicemail for Jyl Moore requesting a call back. Having received no response, on October 3, 2025, we again called Jyl Moore and learned she was no longer with Coterie. We then called the new adjuster, Natalie, and learned she also was no longer with Coterie. On that same day, October 3, 2025, we emailed Coterie to document our efforts to advance this claim and received a reply from Robert Nix stating that a team member would take over.   Also on October 3, 2025, we submitted our Xactimate itemization for building damages

Trean Rec'd 04-16-2026

Received County of Berks Prothonotary's Office on 04/08/2026 12:53 PM Prothonotary Docket No. 26-00690

We have been leaving you voicemail messages and have not heard from you since your email of 10-17-25. Your 10-17-25 email stated you were reviewing the file and would be in touch.

In an effort to move this claim forward, please find the insured's Sworn Statement In Proof Of Loss, along with the support(s).

We trust all submissions are acceptable and request the claim payment to resolve this matter. Please acknowledge receipt and contact us with any questions, comments or requests.

Regards,

Mike Lazarchick
SPAC
610-780-5390

On 10/21/2025 12:16 PM EDT Mike Lazarchick <mikelazarchick@comcast.net> wrote:

10-21-25

Good afternoon Oscar,

We understand you recently received this file and we would like to opportunity to discuss the claim details with you. Today we left you a voicemail message. Please call when you have time.

Regards,

Mike Lazarchick
SPAC
610-780-5390

On 10/17/2025 9:15 AM EDT Oscar Valerio <oscar.valerio@coterieclaims.com> wrote:

Good morning, Mike,

Thank you for your recent communications regarding claim BM-BOP-24-01019. My apologies for the delayed response; I was recently out of the office.

Trean Rec'd 04-16-2026

Good afternoon Diana,

Since 12-19-2025, we left you several (many) voicemail messages without any response. The insured deserves to be informed.

Please call to discuss this claim and move it forward "openly".

Sincerely,

Mike Lazarchick
SPAC
610-780-5390

> On 12/23/2025 2:02 PM EST Mike Lazarchick <mikelazarchick@comcast.net> wrote:

12-23-25

*Request for Prior Claim Communications, Advance Payment, Emergency Mitigation Invoice Payment, and Coverage Position/Offer*

Good afternoon Diana,

This claim, with a date of loss of April 11, 2024, was not assigned to our office until September 8, 2025. Accordingly, we have no firsthand knowledge of the carrier's investigation, communications, representations, or decisions made during the first approximately 17 months of claim handling.

Despite repeated requests, the carrier has refused to release any claim file materials, communications, or documentation generated prior to our involvement. This includes, but is not limited to, correspondence with the insured, vendor communications, internal notes, coverage evaluations, estimates, or payment determinations.

This refusal materially impairs our ability to:

- Accurately advise the insured;
- Understand Coterie's evolving positions;
- Evaluate delay, misrepresentation, or omission issues; and
- Move the claim toward resolution.

Your continued withholding of this information is particularly concerning given that Coterie now appears to be attributing delay, mitigation issues, or claim deficiencies to the insured, while simultaneously preventing transparency regarding what actions the carrier itself took —or failed to take—during the majority of the claim's lifespan.

In your email dated 12-18-25, you stated that you spoke with FastPro, who you indicated performed emergency mitigation services and has not been paid. Because this information had not previously been disclosed to us, we contacted FastPro directly in an effort to expedite resolution.

Received County of Berks Prothonotary's Office on 04/08/2026 12:53 PM Prothonotary Docket No. 26-00690

Trean Rec'd 04-16-2026

Received County of Berks Prothonotary's Office on 04/08/2026 12:53 PM Prothonotary Docket No. 26-00690

During our conversation with Ashley at FastPro, she advised that you contacted FastPro requesting their invoice and that she attempted to transmit it to you, but the email reportedly failed. For clarity and completeness, we are attaching FastPro's documentation, including:

- FastPro W-9
- FastPro Work authorization (dated 4-11-2024)
- FastPro Estimate
- FastPro Invoice
- FastPro Photo report
- FastPro Certificate of completion (dated June 10, 2024)

The undisputed amount due for emergency mitigation services is $2,789.19. Please immediately issue payment in the amount of $2,789.19, payable to FastPro and the insured, and mail it to our office for proper disbursement.

Further, FastPro has confirmed that they did not prepare or present any estimate for proposed restoration work, nor did the insured decline any such estimate—directly contradicting implications contained in your 12-18-25 correspondence.

Accordingly, please confirm in writing:

- Whether the carrier or any vendor acting on its behalf ever provided the insured with a written scope, estimate, or restoration proposal; and
- If so, produce that documentation immediately.

Our records reflect that despite acknowledged smoke and water damage resulting from a neighboring fire, the only payment issued to date is $2,500 for food loss, with no advance payments, no repair scope, no settlement offer, and no written coverage determination issued.

Now, more than 20+ months post-loss, after the insured has submitted a complete inventory of damages (BPP, betterments and improvements, and ongoing expenses), tax returns, lease, fire report, and proof of ownership, the insured is being accused of failing to mitigate—despite your acknowledgment that mitigation services were performed at the carrier's direction.

This position is inconsistent with the known facts and documentation and raises serious concerns regarding claim handling and the withholding of undisputed benefits.

Accordingly, please immediately provide:

1. Copies of all claim-related communications and materials generated between April 11, 2024 and September 8, 2025;
2. An explanation for why no advance payments have been issued;
3. An explanation for why no settlement offer has been tendered; and
4. A clear written coverage position, identifying any specific policy exclusion or limitation being asserted.

Trean Rec'd 04-16-2026

Absent a written denial citing specific policy language, continued non-payment constitutes improper withholding of benefits.

We look forward to your prompt response so this matter may be resolved without further escalation.

Regards,

Mike Lazarchick
SPAC
Public Adjuster
610-780-5390

On 12/19/2025 4:06 PM EST Mike Lazarchick <mikelazarchick@comcast.net> wrote:


12-19-25
Good afternoon Diana,

During our telephone conversation on Tuesday, December 16, 2025, you confirmed that you had received all requested documentation, and we scheduled a follow-up call for December 18, 2025. On December 18, we called and left a voicemail at approximately 5:21 PM EST. Rather than returning the call, you sent an email at 6:11 PM EST.

In your December 18 email, you acknowledge that the insured sustained covered damages and further acknowledge that payment has been withheld. You also state that an inspector advised you as early as August 2024 that damages existed. To date, however, we have received no documentation reflecting any offer, payment, coverage position, or adjustment activity during the first several months following the loss. Despite repeated requests, all prior correspondence and claim file documentation from before our involvement continues to be withheld.

Additionally, your December 18 email requests documents that directly conflict with your statements during our December 16 conversation, when you confirmed that you had all information requested. For clarity, you were correct on December 16. You have been provided with the insured's agreement of sale confirming ownership of all items remaining inside the restaurant. No items being claimed are owned by any third party. Please advise if there is any specific reason you question the insured's ownership of the claimed property.

If you are now attempting to deny coverage—nearly twenty (20) months after the date of loss—please notify us immediately. We again call your attention to the Pennsylvania Unfair Insurance Practices Act, Chapter 146, Subchapter A, Section 146.7(a)(1), which requires acceptance or denial of a claim within fifteen (15) working days of receipt of properly executed proofs of loss, and mandates that any denial cite the specific policy provisions relied upon, in writing.

Received County of Berks Prothonotary's Office on 04/08/2026 12:53 PM Prothonotary Docket No. 26-00690

Trean Rec'd 04-16-2026

Regarding FastPro Restorations, we will address any invoices or alleged work once their documentation is produced. Additionally, your statements—along with FastPro's—suggesting that the insured was offered remediation and declined it are unsupported by any documentation. If such an offer or advice was made, please provide written proof immediately. Absent documentation, such assertions are inaccurate and potentially slanderous. Either an offer was made, or it was not; without records, no assumptions can be made.

It appears you may be missing (or overlooking) portions of the insured's claim submission. Accordingly, we are providing access to an iCloud folder containing the following:

https://www.dropbox.com/scl/fo/ophtqqhrtygctlph24mxt/AAKMvd66kNEPvCAnUgssz08?rlkey=zup5o2e59v4ke6b2zxxmj81x9&st=9a16yye7&dl=0

- Lease agreement (increases by $50.00 per year)

- Rent loss running total to date - $27,400

- Proof of Loss

- Itemized inventory loss - $80,525.88

- SPAC Notice of Assignment - 9-8-2025

- SPAC Xactimate - $37,742.31 (restoration / betterment-improvement)

- 2023 and 2024 tax returns

- General Bill of Sale (Salazar Cocina ownership of BPP and build-out)

- Two years of Met-Ed bills

- Met-Ed electric costs running total to date - $1,405.55

- 77 property photos

- Fire report

- Doyle Adjusting withdrawal letter - 6-21-2024

- Building appraisal award documentation confirming no interior items were included in the building adjustment

Ownership, responsibility, damage, valuation, and loss-of-income documentation have all been provided.

Our records further reflect that the insured has received a single payment of $2,500 for a food loss allowance.

Received County of Berks Prothonotary's Office on 04/08/2026 12:53 PM Prothonotary Docket No. 26-00690

Trean Rec'd 04-16-2026

Received County of Berks Prothonotary's Office on 04/08/2026 12:53 PM Prothonotary Docket No. 26-00690

Thank you for issuing the $75.00 reimbursement for our costs for the Fire Report.

Please acknowledge receipt of the attached materials and advise whether you have any additional requests. Our intent is to resolve this loss openly, fairly, and efficiently. We encourage transparent, respectful, and forward-moving communication.

Regards,

Mike Lazarchick
SPAC
610-780-5390

On 12/18/2025 6:09 PM EST Diana King <diana.king@coterieclaims.com> wrote:

Dear Mr. Lazarchick,
Thank you for your email dated December 16, 2025, and for summarizing our recent conversation regarding the Salazar Cocina LLC claim (BM-BOP-24-01019). We appreciate your continued engagement and your efforts to move this matter forward.
This correspondence is to confirm our understanding of the items discussed, provide clarification where helpful, and outline what remains needed to complete our evaluation:

**1) Advance Payment Request**
We understand your request for an advance. As previously communicated, any additional payments are contingent upon completion of our coverage evaluation and verification of the claimed damages in accordance with the policy conditions. A **$2,500 food spoilage payment** was issued on **December 2, 2024** as an initial advance. At this time, we are unable to issue further advances without the necessary supporting documentation and a complete assessment of the total loss.

**2) Fire Report Reimbursement**
We will process reimbursement for the **$75.00** Fire Report fee. This payment will be processed as a **claim expense**.

**3) FastPro Restorations – Documentation**
We have located the signed **Power of Attorney** and **Direct Pay Authorization** for FastPro Restorations in the claim file. We have also been in contact with FastPro, and they confirmed they performed initial water mitigation (equipment placement/drying) at the loss location, and that their proposal for additional work was not approved by the insured. We are awaiting FastPro's complete file materials, including itemizations, invoices, and photographs, and will review them upon receipt.
For clarity, FastPro has advised that a bid for additional mitigation work was presented and **not authorized by the insured**. Accordingly, it appears the insured had a clear opportunity to further mitigate the loss and **elected not to proceed** with the additional mitigation measures recommended at that time.
Please note the insured's ongoing duty under the policy to provide documentation supporting mitigation efforts and related charges.

**4) Prior Correspondence (Pre-Representation)**
We will review and provide relevant, non-privileged communications and documentation from prior to your firm's involvement (**September 8, 2025**), consistent with policy terms and applicable legal obligations. **For clarity, this production will be limited to photographs and any estimates generated during that timeframe.**

**5) Prior Handling / Lack of Response**
For additional context, the prior claim handler, **Natalie Arroyave**, attempted to contact the insured on multiple occasions without response. Due to the insured's lack of response and failure to provide requested information, the claim was previously **closed for non-cooperation/lack of response**. Additionally, to avoid any misunderstanding, the fact that the insured's previously retained public adjuster elected to discontinue representation does **not** excuse the insured's prior delays, nor does it

ZENSTEIN KOVALSKY, LLC
1240 OLD YORK ROAD
WARMINSTER, PA 18974

FIRST-CLASS





US POSTAGE

ZIP 18974
02 7H
0006229341

$

BENCHMARK INSURANCE COMPANY
150 LAKE STREET
WAYZATA, MN 55391

APR 18 2026

Policy #
CBB-00078642-00

Trean Rec'd 04-16-2026